IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS M. JACKSON and PATRICIA G. JACKSON, as individuals and as representatives of the classes, | Civil Action No.: 2:12-cv-01262-DSC |
| | Judge David Stewart Cercone |
| Plaintiffs, | **ELECTRONICALLY FILED** |
| v. | |
| WELLS FARGO BANK, N.A. and WELLS FARGO INSURANCE, INC. | |
| Defendants. | |

**FIRST AMENDED CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL**

Plaintiffs Thomas M. Jackson ("Mr. Jackson") and Patricia Glace Jackson ("Ms. Jackson") (collectively, "Plaintiffs"), on behalf of themselves and the putative classes set forth below, and in the public interest, bring this First Amended Complaint against Defendants Wells Fargo Bank, N.A. ("WFB") and Wells Fargo Insurance, Inc. ("WFI") (collectively, "Defendants").

## THE PARTIES

1.   Plaintiffs reside in New Freedom, Pennsylvania, and are members of the Putative Classes defined below.

2.   Defendant WFB is a national banking association, legally headquartered in Sioux Falls, South Dakota. WFB does business in the State of Pennsylvania, and other

states throughout the country.  WFB services mortgages through its Wells Fargo Home Mortgage division.

3. WFI is an affiliate of WFB, and is based in St. Louis Park, Minnesota. WFI performs flood zone determinations through its Flood Services division.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over Plaintiffs' Truth-In-Lending Act ("TILA") and Real Estate Settlement Procedures Act ("RESPA") claims pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

5. This Court also has original jurisdiction over this case under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).  Plaintiffs are citizens of the State of Pennsylvania, and Defendants are citizens of different states.  The amount in controversy in this action exceeds $5,000,000, and there are more than 100 members of each of the Putative Classes.

6. Venue is proper in the Western District of Pennsylvania, pursuant to 28 U.S.C. § 1391.  This is a related case to *Morris v. Wells Fargo Bank, N.A.*, No. 2:11-cv-00474-DSC (W.D.Pa.) that will involve overlapping discovery, Plaintiffs are residents of Pennsylvania, and Wells Fargo does business in Pennsylvania.

## FACTUAL ALLEGATIONS

*Wrongful After-the-Fact Flood Insurance Requirement*

7. On August 31, 2011, Plaintiffs obtained a mortgage loan from WFB in the amount of $107,500.  A true and correct copy of Plaintiffs' mortgage agreement with WFB ("Mortgage") is attached hereto as Exhibit 1.

2

8.  In connection with this mortgage loan, Plaintiffs received a Truth-in-Lending Disclosure ("TILA Disclosure").  The initial version of the TILA Disclosure erroneously stated that flood insurance was required for Plaintiffs' property.  However, this error was later corrected, and the TILA Disclosure was amended (with the approval and consent of WFB) to provide that flood insurance "is not required" for Plaintiffs' property.  A true and correct copy of this amended TILA Disclosure, which Plaintiffs signed at the closing of their mortgage loan, is attached hereto as Exhibit 2.

9.  At the closing, Plaintiffs also signed a Standard Flood Hazard Determination ("SFHD"), which had been prepared by WFI for WFB.  This SFHD affirmatively indicated that flood insurance was not required:

> **D. DETERMINATION**
> **IS BUILDING / MOBILE HOME IN A SPECIAL FLOOD HAZARD AREA (ZONES CONTAINING THE LETTERS "A" OR "V")?**       ☐ YES     ☒ NO
> If yes, flood insurance is required by the Flood Disaster Protection Act of 1973.
> If no, flood insurance is not required by the Flood Disaster Protection Act of 1973.

> **Compliance Quick Check**
> Is Flood Insurance Required?   NO

A true and correct copy of this SFHD is attached hereto as Exhibit 3.[1]

10.  In spite of these signed disclosures (including the TILA Disclosure), WFB sent Plaintiffs a form letter on or about November 7, 2011 – barely two months later – contending that flood insurance "is a requirement of your loan."  This letter further stated that if Plaintiffs did not provide WFB with evidence of flood insurance, WFB would

---

[1] Consistent with Defendants' determination that no flood insurance was required, the section of the SFHD relating to the *amount* of flood insurance required was left blank.

3

purchase such insurance for Plaintiffs' property, at their expense. A true and correct copy of this form letter is attached hereto as Exhibit 4.

11. Plaintiffs repeatedly objected to WFB's attempt to impose this previously-undisclosed flood insurance requirement on them. On at least two occasions, Plaintiffs called the customer service number listed on the form letter (866-826-4884), but their calls were rolled over to voice mail and their messages were not returned. In addition, Plaintiffs wrote a letter of protest to WFB on December 9, 2011, in which they "emphatically state[d] that flood insurance is not a requirement of [their] loan," and enclosed a copy of the SFHD that they signed at closing. A true and correct of Plaintiffs' letter is attached hereto as Exhibit 5.

12. Plaintiffs initially received no response to their letter. As a result, Plaintiffs felt they had no choice but to purchase the coverage demanded by WFB, and did so. Upon purchasing this coverage, Mr. Jackson sent a second letter to WFB on December 19, 2011, stating as follows:

> In compliance with your November 7, 2011, I have purchased additional flood insurance from the NFIP to increase my coverage to $250,000 [the amount demanded by WFB].
> * * *
> I still maintain that my property is not in a flood hazard area, that I would not have taken out the loan if I had known that flood insurance was required, and that your company assured me that I was not required to obtain flood insurance prior to my signing the settlement papers. Further, my obtaining additional flood insurance does not mean I am giving up any rights or remedies that I may have to appeal or have this matter reviewed and resolved in my favor.

A true and correct copy of this letter is attached hereto as Exhibit 6.[2]

---

[2] The flood insurance coverage that Plaintiffs procured under protest in order to meet WFB's previously-undisclosed flood insurance requirement cost several hundred dollars.

4

13.     On January 5, 2012, WFB finally sent Plaintiffs a letter responding to their concerns.  In this letter, WFB contended that the SFHD was for the "garage only," and enclosed a separate flood zone determination for Plaintiffs' "residence only."  *See* Exhibit 7.  Notably, this purported flood zone determination for Plaintiffs' residence had not been provided to Plaintiffs previously, and was not signed by Plaintiffs at the loan closing.  Moreover, this purported flood zone determination for Plaintiffs' residence bears indicia of fraud.  The comments on the form (in Section E) state that WFI made a determination regarding the flood zone status of Plaintiffs' residence on "8/23/11".  However, the DATE OF DETERMINATION listed on the form is August 17, 2011.

14.     After receiving this correspondence, Plaintiffs contacted WFB once again, and spoke to an Executive Mortgage Specialist at WFB.  During this phone call, Plaintiffs expressed their dismay that WFB had not disclosed its flood insurance requirement to them at the closing of their loan.  In response, WFB abandoned its position that the SFHD pertained to the "garage only," and sent Plaintiffs a follow-up letter stating as follows:

> This letter is in response to our telephone conversation on February 2, 2012, regarding the financing of your mortgage loan with Wells Fargo Home Mortgage ("WFHM").  You expressed concerns about the flood insurance requirement not being disclosed to you during the closing of your loan.
>
> **Our records reflect that flood insurance was not required on your loan at the time of closing.  This is reflected on the Standard Flood Hazard Determination and the Truth-In-Lending Disclosure**, which I have enclosed.
>
> **We apologize for the incorrect information that was provided to you stating that flood insurance was required on your property.**

Exhibit 8 (emphasis added).

15. By the time Plaintiffs received this letter, however, they already had paid off their mortgage loan with WFB and had refinanced with another bank in order to free themselves from WFB's onerous flood insurance requirement. Plaintiffs' current lender does not require flood insurance for their property, and has determined that their home does not fall in a special flood hazard area.

16. The transaction costs associated with this payoff and refinancing were substantial. However, WFB did not offer to reimburse Plaintiffs for any of these transaction costs, and did not offer to reimburse Plaintiffs for the flood insurance premiums that they incurred for the coverage that they purchased in response to WFB's November 7, 2011 form letter. WFB simply offered them an empty and belated apology.

17. WFB had no right to demand flood insurance for Plaintiffs' property. As noted above:

- The TILA Disclosure that Plaintiffs signed stated that flood insurance was "not required" (*see supra* at ¶ 8);

- The SFHD that Plaintiffs signed stated that flood insurance was "not required" (*see supra* at ¶ 9);

- Plaintiffs' current lender has determined that flood insurance is not required (*see supra* at ¶ 15); and

- Wells Fargo eventually admitted that "flood insuance was not required" (*see supra* at ¶ 14).

Moreover, prior to closing, Plaintiffs obtained their own independent flood zone determination from CoreLogic Flood Services ("CoreLogic"), which determined that flood insurance was "not required." *See* Exhibit 9.

18. It was deceptive and misleading for WFB to supply Plaintiffs with an erroneous flood zone determination, after the closing of their mortgage loan, in an attempt to justify its bogus flood insurance requirement.

*Improper Charges for Flood Zone Determination*

19. WFB charged Plaintiffs $19.00 for the flood zone determination that was performed by WFI in connection with Plaintiffs' mortgage loan. This charge was reflected on Plaintiffs' HUD-1 Settlement statement.

20. The amount that Plaintiffs were charged for this flood zone determination significantly exceeded the actual cost of the flood zone determination, and exceeds the reasonable amount that may be charged for a flood zone determination.

21. By comparison, Plaintiffs' flood zone determination from CoreLogic cost only $6.00. This is the amount that CoreLogic typically charges for flood zone determinations, according to its website. *See* Exhibit 10 at p.6.

22. Under the National Flood Insurance Act ("NFIA"), lenders may only charge borrowers a "reasonable fee" for flood zone determinations. 42 U.S.C. § 4012a(h). The amount that WFB charged Plaintiffs for their flood zone determination was not reasonable.

23. Moreover, the amount that WFB charged Plaintiffs for their flood zone determination vastly exceeded the actual cost of the flood zone determination. Although WFB charged nearly $20 for the flood zone determination, the actual cost was closer to $5.

24. WFB kept the difference for itself. Discovery will show that WFI kicked back a portion of the charge for Plaintiffs' flood zone determination to WFB and/or split the charge for this flood zone determination with WFB.

25. It is typical for WFI to kick back to WFB a substantial portion of the proceeds that it earns on referral business from WFB through its "soft dollars" program.[3] The passback of these so-called soft dollars is reflected on the general ledger, and is reported on a "Profitability Passback Report."

26. To the extent that WFI did not pass back the difference between the $19 charge and the actual cost of the flood zone determination through its soft dollars program, WFB paid only a portion of the $19 charge to WFI and kept the remainder as an unearned mark-up. Either way, Defendants' conduct was unlawful. *See Santiago v. GMAC Mortg. Group, Inc.*, 417 F.3d 384 (3d Cir. 2005) (plaintiff stated valid claim for RESPA violation where mortgage lender allegedly marked-up "flood certification fee" to $20.00, even though actual cost was lower).[4]

27. As a result of these unlawful flood zone determination charges, Defendants reaped millions of dollars in fees that they would not otherwise have received. Under the NFIA, lenders are required to make a flood zone determination whenever they originate a mortgage loan secured by residential property. WFB is, by far, the nation's largest residential mortgage lender. According to Bloomberg News, WFB

---

[3] This "soft dollars" program is a matter of publicly-filed deposition testimony in *Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11-cv-81373-DMM (S.D. Fla.).

[4] The Federal Deposit Insurance Corporation ("FDIC") has specifically warned mortgage lenders that mark-ups on flood zone determinations are unlawful. *See* FDIC Financial Institution Letter 103a-99 at p.2 (attached as Exhibit 11). Moreover, the United States Department of Housing and Urban Development ("HUD") has provided similar guidance to mortgage lenders. *See* HUD Mortgagee Letter 95-101 at p.2 (attached as Exhibit 12).

controlled over one-third of the residential mortgage market in the United States as of the end of the first quarter of 2012. *See* Exhibit 13. This market share exceeds the market share of the next seven largest mortgage lenders **combined**. As a result, Defendants' revenue stream from flood zone determinations is enormous.

## CLASS ACTION ALLEGATIONS

28. Plaintiffs bring this Action on behalf of three proposed classes of WFB Borrowers.[5]

29. Plaintiffs assert their TILA claim in Count 1 on behalf of a putative Nationwide TILA Class defined as follows:

> **Proposed Nationwide TILA Class:** All persons with residential property in the United States who received a TILA Disclosure stating that flood insurance was not required for their property, and who were not originally required to obtain flood insurance for their property as a condition of any mortgage loan or line of credit, who were subsequently required by WFB to purchase or maintain flood insurance for their property on or after August 30, 2011, without an intervening change in FEMA's flood zone map affecting their property.

30. Plaintiffs assert their RESPA claim in Count 2 on behalf of a putative Nationwide RESPA Class defined as follows:

> **Proposed Nationwide RESPA Class:** All persons in the United States who were charged for a standard flood hazard determination by WFB on or after August 30, 2011.

31. Plaintiffs assert their claims for breach of contract/breach of the covenant of good faith and fair dealing (Count 3) and unjust enrichment (Count 4) on behalf of a putative Nationwide Common Law Class defined as follows:

---

[5] Plaintiffs reserve the right to amend their proposed class definitions or propose other classes (or subclasses) in their class certification motion, after having an opportunity for discovery.

9

>**Proposed Nationwide Common Law Class:** All persons in the United States who meet either the following criteria: (1) were charged for a standard flood hazard determination by WFB during the applicable limitations period; or (2) received a TILA Disclosure stating that flood insurance was not required for their property, and were not originally required to obtain flood insurance for their property as a condition of any mortgage loan or line of credit, but were subsequently required by WFB to purchase or maintain flood insurance for their property during the applicable limitations period, without an intervening change in FEMA's flood zone map affecting their property.

32. <u>Numerosity</u>:   The Putative Classes are so numerous that joinder of all Class members is impracticable.

33. <u>Typicality</u>:   Plaintiffs' claims are typical of the members of the Putative Classes. The amounts that WFB charged Plaintiffs for their flood zone determination are typical of the amounts that WFB charged other borrowers, and it is typical for WFB to split fees with WFI for flood zone determinations and/or for WFI to kick back a portion of the fees it receives for flood zone determinations to WFB. Further, it is typical for WFB to send form letters to class members demanding flood insurance for their residential property in the course of servicing their loans, without regard to whether flood insurance was disclosed as a requirement of their loans in their TILA Disclosures and without regard to whether flood insurance was required at the time of origination of their loans.

34. <u>Adequacy</u>:   Plaintiffs will fairly and adequately protect the interests of the Putative Classes, and have retained counsel experienced in complex class action litigation. Plaintiffs have no interests which are adverse to those of the classes that they seek to represent.

35. <u>Commonality</u>:  Common questions of law and fact exist as to all members of the Putative Classes and predominate over any questions solely affecting individual members of the Putative Classes, including but not limited to:

    A. Whether the form letters sent by WFB to members of the Nationwide TILA Class, demanding flood insurance for their property, were inconsistent with their TILA Disclosures;

    B. Whether WFB may require borrowers to maintain flood insurance in connection with a residential mortgage loan or line of credit where such requirement was not disclosed on their TILA Disclosure and there has not been an intervening change in FEMA's flood zone map affecting their property;

    C. Whether WFB's charges for flood zone determinations are reasonable and appropriate;

    D. Whether WFB received or accepted fees, kickbacks, commissions, or other things of value in connection with an agreement or understanding that flood zone determinations would be conducted by WFI;

    E. Whether Defendants split fees for flood zone determinations, and if so, whether WFB performed any actual services in connection with such flood zone determinations;

    F. Whether WFB violated the TILA by engaging in the conduct described herein;

    G. Whether Defendants violated the RESPA by engaging in the conduct described herein;

    H. Whether WFB owes mortgagors a duty of good faith and fair dealing, and if so, whether it breached this duty by engaging in the conduct described herein;

    I. Whether WFI was unjustly enriched by the conduct described in this Complaint;

    J. The appropriateness and proper form of any declaratory or injunctive relief; and

       K. The appropriateness and proper measure of compensatory damages, statutory damages, restitution, and/or other monetary relief.

36. This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Putative Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

37. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Putative Classes predominate over any questions affecting only individual members of the Putative Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct described in this Complaint stems from common and uniform policies and practices, resulting in unnecessary premiums for flood insurance and unnecessary charges for flood zone determinations that are readily calculable from Defendants' records and other class-wide evidence. Members of the Putative Classes do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution, and Plaintiffs are unaware of any similar claims brought against Defendants by any members of the Putative Classes on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of the Putative Class members' claims in a single forum.

38.     Plaintiffs intend to send notice to all members of the Putative Classes to the extent required by Rule 23.  The names and addresses of the Putative Class members are available from Defendants' records.

## FIRST CLAIM FOR RELIEF
## VIOLATION OF THE TRUTH IN LENDING ACT
## (15 U.S.C. § 1601 *et seq.*)
## (ASSERTED AGAINST WFB)

39.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

40.     WFB is a "creditor" as defined by the TILA.

41.     WFB violated the TILA by requiring Plaintiffs and other Nationwide TILA Class members to purchase flood insurance when such insurance was not disclosed as a requirement on their TILA Disclosure forms.

42.     The TILA violations set forth above occurred within one year of the commencement of this action.

43.     Plaintiffs and the Nationwide TILA Class have been injured and have suffered a monetary loss as a result of WFB's violations of TILA.

44.     As a result of WFB's violations, Plaintiffs and the Nationwide TILA Class are entitled to recover actual damages and a penalty of $500,000 or 1% of WFB's net worth, as provided by 15 U.S.C. § 1640(a)(1)-(2).

45.     Plaintiffs and the Nationwide TILA Class also are entitled to recovery of attorneys' fees and costs to be paid by WFB, as provided by 15 U.S.C. § 1640(a)(3).

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT**
**(12 U.S.C. § 2601 *et seq.*)**
**(ASSERTED AGAINST WFB AND WFI)**

46.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

47.     Plaintiffs' mortgage loan is a federally-regulated mortgage loan subject to the requirements of the RESPA, 12 U.S.C. § 2601 *et seq*.

48.     12 U.S.C. § 2607(a) provides: "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."

49.     12 U.S.C. § 2607(b) further provides: "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."

50.     Defendants have violated the foregoing RESPA provisions by virtue of their conduct as set forth above in Paragraphs 19-27 in connection with flood zone determinations for Plaintiffs and other Nationwide RESPA class members.

51.     WFI unlawfully gave and WFB unlawfully accepted fees, kickbacks, commissions, or other things of value in connection with an agreement or understanding that flood zone determinations would be conducted by WFI.

52.     WFI unlawfully gave a portion, split, or percentage of the charges for flood zone determinations to WFB, and WFB unlawfully accepted the same, even though WFB performed no actual services in connection with flood zone determinations.

53. Plaintiffs and the Nationwide RESPA Class are entitled to statutory damages for Defendants' violations of 12 U.S.C. § 2607(a)-(b) in an amount equal to three times the amount of the charges they paid for flood zone determinations. *See* 12 U.S.C. § 2607(d)(2).

54. Plaintiffs and the Nationwide RESPA Class are also entitled to recover their attorneys' fees and costs of this action pursuant to 12 U.S.C. § 2607(d)(5).

### THIRD CLAIM FOR RELIEF
### BREACH OF CONTRACT/BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (ASSERTED AGAINST WFB)

55. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

56. WFB is the lender-in-interest to Plaintiffs' Mortgage and is bound by the terms of the Mortgage.

57. Paragraph 14 of Plaintiffs' Mortgage provides that the "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law."

58. WFB's flood zone determination fees are illegal under Applicable Law, including but not limited to the RESPA and NFIA provisions set forth above. *See* 12 U.S.C. § 2607; 42 U.S.C. § 4012a(h).

59. WFB breached the express terms of the Mortgage by charging these flood zone determination fees in contravention of applicable federal law.

60. WFB also breached the covenant of good faith and fair dealing that is an implied term of Plaintiffs' Mortgage.

61.     Although Paragraph 5 of Plaintiffs' Mortgage allowed WFB to charge Plaintiffs for a flood zone determination, this right was not unlimited.  Consistent with its duty of good faith and fair dealing, WFB could only charge Plaintiffs a reasonable fee, and could not include any kickbacks or mark-ups in the charges.  WFB breached this duty by engaging in the conduct described in Paragraphs 19 - 27 this Complaint.

62.     Although Paragraph 5 of Plaintiffs' Mortgage granted WFB the discretion to determine what types of property insurance were required as a condition of Plaintiffs' loan (and in what amounts), this right also was subject to a duty of good faith and fair dealing.  Consistent with this duty of good faith and fair dealing, WFB could not advise Plaintiffs that flood insurance was "not required" as a condition of their loan, but later demand flood insurance for their property without an intervening change in the FEMA flood zone map affecting their Property.[6]  WFB breached this duty by engaging in the conduct described in Paragraphs 7 - 18 this Complaint.

63.     WFB breached its express and implied contractual obligations to other members of the Nationwide Common Law Class in the same or similar manner.

64.     WFB willfully engaged in these breaches, in bad faith, to (i) unfairly and unconscionably maximize revenue from Plaintiffs and other borrowers; and (ii) gain unwarranted contractual and legal advantages.

65.     As a result of these breaches, Plaintiffs and the Nationwide Common Law Class have been injured, and have suffered actual damages and monetary losses.

66.     Plaintiffs and the Nationwide Common Law Class are entitled to recover their damages and other appropriate relief from WFB.

---

[6] There has been no intervening change in the FEMA flood zone map affecting Plaintiffs' property.

16

## FOURTH CLAIM FOR RELIEF
## UNJUST ENRICHMENT
## (ASSERTED AGAINST WFI)

67. WFI has been unjustly enriched as a result of the conduct described in Paragraphs 7 - 27 of this Complaint.

68. WFI received inflated payments and/or improper fee splits in connection with flood zone determinations.

69. Retention of these benefits by WFI would be unjust and inequitable because:

   A. charges for flood zone determinations must be reasonable;

   B. fee-splits and kickbacks in connection with flood zone determinations are unlawful;

   C. The SFHD that Plaintiffs signed at closing was disregarded by WFB; and

   D. The flood zone determination that was provided to Plaintiffs after the closing of their mortgage loan was inaccurate.

70. These unjust benefits came at the ultimate expense of Plaintiffs and other members of the Nationwide Common Law Class who paid for flood zone determinations.

71. Because it would be unjust and inequitable for WFI to retain such benefits, Plaintiffs and the Nationwide Common Law Class are entitled to restitution of all monies unjustly and inequitably retained.  WFI cannot retain these payments in good conscience.

## PRAYER FOR RELIEF

72. WHEREFORE, Plaintiffs, on behalf of themselves and the Putative Classes, pray for relief as follows:

A. Determining that this action may proceed as a class action under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure;

B. Designating Plaintiffs as class representatives for the Putative Classes;

C. Designating Plaintiffs' counsel as counsel for the Putative Classes;

D. Issuing proper notice to the Putative Classes at Defendants' expense;

E. Declaring that Defendants' conduct as alleged herein violated the TILA;

F. Declaring that Defendants' conduct as alleged herein violated the RESPA;

G. Declaring that Defendants acted willfully in deliberate or reckless disregard of applicable law and the rights of Plaintiffs and the Putative Classes as alleged herein;

H. Awarding appropriate equitable relief, including but not limited to restitution and an injunction requiring Defendants to cease and desist from engaging in further unlawful conduct in the future;

I. Awarding actual damages, statutory damages/penalties, punitive damages, and interest;

J. Awarding reasonable attorneys' fees and costs to the full extent permitted by law; and

K. Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

73. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs and the Putative Classes demand a trial by jury.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:  November 2, 2012 | NICHOLS KASTER, PLLP |

/s/ *Kai H. Richter*
Kai H. Richter, MN Bar No. 0296545*
E. Michelle Drake, MN Bar No. 0387366*
  *(admitted *pro hac vice*)
Michele R. Fisher, MN Bar No. 303069
    (admitted to practice in W.D.Pa.)
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
Email:  krichter@nka.com
          drake@nka.com
          fisher@nka.com

ATTORNEYS FOR PLAINTIFFS AND THE PUTATIVE CLASSES

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS M. JACKSON and PATRICIA G. JACKSON, as individuals and as representatives of the classes, | : : : : | Civil Case No.: 2:12-cv-01262-DSC **Judge David Stewart Cercone** |
| Plaintiffs, | : : | **ELECTRONICALLY FILED** |
| v. | : : : : | |
| WELLS FARGO BANK, N.A. and WELLS FARGO INSURANCE, INC. | : : : : | |
| Defendants. | : | |

**CERTIFICATE OF SERVICE**

I, Kai Richter, hereby certify that on this 2nd day of November, 2012, Plaintiffs' *First Amended Class Action Complaint and Demand for Jury Trial* was filed electronically and is available for viewing and downloading from the ECF system of the United States District Court for the Western District of Pennsylvania.  The ECF System's electronic mailing service constitutes service on all parties who have consented to electronic service.

                                               */s/ Kai H. Richter*