## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS M. JACKSON and PATRICIA G. JACKSON, as individuals and as representatives of the classes, | **Civil Action No.: 2:12-cv-01262-DSC** |
| | **Judge David Stewart Cercone** |
| Plaintiffs, | **ELECTRONICALLY FILED** |
| v. | |
| WELLS FARGO BANK, N.A. and WELLS FARGO INSURANCE, INC. | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND ................................................................................2

    I.      PROCEDURAL HISTORY ...............................................................2

           A.      The Complaint and Motions to Dismiss ...................................2

           B.      Discovery in this Action and the Related *Morris* Action ...........................2

           C.      Mediation ....................................................................................4

           D.      Terms of Settlement Agreement ...............................................4

           E.      Settlement Administration and Response to Class Notice.........6

ARGUMENT ........................................................................................................7

    I.      CLASS COUNSEL ARE ENTITLED TO RECOVERY OF REASONABLE ATTORNEYS' FEES AND EXPENSES, AS PROVIDED BY THE SETTLEMENT AGREEMENT...........................7

    II.      THE REQUESTED AMOUNT IS REASONABLE ON ITS FACE, AS IT REPRESENTS LESS THAN 6.4% OF THE TOTAL VALUE OF THE SETTLEMENT .........................................7

    III.      THE *GUNTER* FACTORS SUPPORT THE REQUESTED FEE AWARD ...............................10

           A.      The Size of the Fund and Number of Persons Benefited Supports the Requested Award ...................................................10

           B.      The Absence of Objections Weighs in Favor of the Requested Award ....11

           C.      The Skill and Efficiency of the Attorneys Involved Weighs in Favor of the Requested Award ...............................................12

           D.      The Complexity and Duration of the Litigation Weighs in Favor of the Requested Award ...............................................14

           E.      The Risk of Nonpayment Was Substantial ................................15

            F.      Class Counsel Have Devoted Substantial Time and Effort to this Action and the Related *Morris* Action..................................17

           G.      The Requested Award Is Reasonable in Comparison to the Amounts Typically Awarded in Other Class Cases ...................19

IV.    A<small>PPLICATION OF THE</small> *P<small>RUDENTIAL</small>* F<small>ACTORS</small> S<small>UPPORTS THE</small> R<small>EQUESTED</small> A<small>WARD.</small> 19

V.    A <small>LODESTAR CROSS-CHECK SUPPORTS THE REQUESTED AWARD.</small> ...........................20

VI.   T<small>HE</small> R<small>EASONABLENESS OF THE</small> R<small>EQUESTED</small> A<small>WARD</small> I<small>S</small> F<small>URTHER</small> D<small>EMONSTRATED</small> <small>BY THE</small> F<small>ACT THAT</small> I<small>T</small> I<small>S</small> I<small>NCLUSIVE OF</small> E<small>XPENSES</small>...................................................24

CONCLUSION.........................................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ............................................................................... 16

*Arnett v. Bank of America, N.A.*, No. 3:11-cv-01372,
   Dkt. No. 288 (D. Or. Sept. 18, 2014) .................................................... 13

*Boeing Co., v. Van Gemert,*
   444 U.S. 472 (1980) ...................................................................... 7, 8, 9

*Bradburn Parent Teacher Store, Inc. v. 3M,*
   513 F. Supp. 2d 322 (E.D. Pa. 2007) .................................................... 11

*Camden I Condo. Ass'n, Inc. v. Dunkle,*
   946 F.2d 768 (11th Cir. 1991) ................................................................ 8

*Casey v. Citibank, N.A.,*
   2014 WL 4120599 (N.D.N.Y. Aug. 21, 2014) ...................................... 19

*Casey v. Citibank, N.A.*, No. 5:12-cv-00820,
   Dkt. No. 222 (N.D.N.Y. Aug. 21, 2014) ............................................... 13

*Cook v. RBS Citizens, N.A.*, No. 1:11-cv-00268,
   Dkt. No. 78 (D.R.I. Oct. 9, 2014) ......................................................... 13

*Dewey v. Volkswagen Aktiengesellschaft,*
   558 F. App'x 191 (3d Cir. 2014) ....................................................... 7, 9

*Ellsworth v. U.S. Bank, N.A.,*
   2014 WL 2734953 (N.D. Cal. June 13, 2014) ....................................... 13

*Esslinger v. HSBC Bank Nevada, N.A.,*
   2012 WL 5866074 (E.D. Pa. Nov. 20, 2012) .......................................... 9

*Farmer v. Bank of America, N.A.*, No. 5:11-cv-00935,
   Dkt. No. 140 (W.D. Tex. Oct. 21, 2013) ............................................... 13

*Gascho v. Global Fitness Holdings, LLC,*
   2014 WL 1350509 (S.D. Ohio April 4, 2014), ................................... 9, 14

*Goldberger v. Integrated Res., Inc.,*
   209 F.3d 43 (2d Cir. 2000) ..................................................................... 8

*Gomez v. Wells Fargo Bank, N.A.,*
   676 F.3d 655 (8th Cir. 2012) ................................................................ 15

*Gottlieb v. Barry*,
  43 F.3d 474 (10th Cir. 1994) ............................................................................ 8

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000)........................................................................ 10, 22

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991) ............................................................................ 8

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)........................................................................................ 11

*Hofstetter v. Chase Home Fin., LLC*,
  2011 WL 1225900 (N.D. Cal. Mar. 31, 2011)................................................ 12

*Holmes v. Bank of America, N.A.*, No. 3:12-cv-00487,
  Dkt. 203 (W.D.N.C. Jan. 15, 2015) ................................................................ 13

*Horton v. Metropolitan Life Ins. Co.*, No. 93-1849-CIV-T-23A,
  1994 U.S. Dist. LEXIS 21395 (M.D. Fla. Oct. 25, 1994) .............................. 16

*In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*,
  2012 WL 6923367 (E.D. Pa. Oct. 19, 2012)................................................ 7, 19

*In re Baby Prods. Antitrust Litig.*,
  708 F.3d 163 (3d Cir. 2013)............................................................................. 9

*In re Cendant Corp. Sec. Litig.*,
  404 F.3d 173 (3d Cir. 2005)....................................................................... 20, 22

*In re Flonase Antitrust Litig.*,
  291 F.R.D. 93 (E.D. Pa. 2013)........................................................................ 24

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)........................................................................... 7, 8

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
  148 F.3d 283 (3d Cir. 1998) ........................................................................... 19

*In re Rite Aid Corp. Sec. Litig.*,
  362 F. Supp. 2d 587 (E.D. Pa. 2005) ............................................................. 22

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005)................................................................ 10, 11, 21

*In re Thirteen Appeals Arising Out of San Juan DuPont Plaza Hotel Fire Litig.*,
  56 F.3d 295 (1st Cir. 1995)............................................................................... 8

*Jones v. ABN Amro Mortg. Grp., Inc.,*
  606 F.3d 119 (3d Cir. 2010)..............................................................15

*Lake Forest Partners, L.P. v. Sprint Commc'ns Co., L.P.,*
  2013 WL 3048919 (W.D. Pa. June 17, 2013).......................................8, 9

*Martinez v. Wells Fargo Home Mortg., Inc.,*
  598 F.3d 549 (9th Cir. 2010) ............................................................15

*Masters v. Wilhelmina Model Agency, Inc.,*
  473 F.3d 423 (2d Cir. 2007)...............................................................9

*McCrimmon v. Wells Fargo Bank, N.A.,*
  516 F. App'x 372 (5th Cir. 2013)........................................................15

*Milliron v. T-Mobile USA, Inc.,*
  2009 WL 2009 WL 3345762 (D.N.J. Sept. 10, 2009).............................10

*Milliron v. T-Mobile USA, Inc.,*
  423 F. App'x 131 (3d Cir. 2011) ........................................................10

*Minter v. Wells Fargo Bank, N.A.,*
  762 F.3d 339 (4th Cir. 2014) ............................................................15

*Mirakay v. Dakota Growers Pasta Co.,*
  2014 WL 5358987 (D.N.J. Oct. 20, 2014)..............................8, 9-10, 24

*O'Keefe v. Mercedes-Benz USA, LLC,*
  214 F.R.D. 266 (E.D. Pa. 2003).....................................................20, 22

*Rawlings v. Prudential-Bache Props. Inc.,*
  9 F.3d 513 (6th Cir. 1993) ..................................................................8

*Rossi v. Proctor & Gamble Co.,*
  2013 WL 5523098 (D.N.J. Oct. 3, 2013)................................................1

*Rowe v. E.I. DuPont de Nemours & Co.,*
  2011 WL 3837106 (D.N.J. Aug. 26, 2011) ...........................................10

*Stop & Shop Supermarket Co.v. SmithKline Beecham Corp.,*
  2005 WL 1213926 (E.D. Pa. May 19, 2005).......................................21-22

*Sullivan v. DB Investments, Inc.,*
  667 F.3d 273 (3d Cir. 2011)...............................................................16

*Swedish Hosp. Corp. v. Shalala,*
  1 F.3d 1261 (D.C. Cir. 1993) ...............................................................8

*Taggart v. Norwest Mortg., Inc.*,
   539 F. App'x 42 (3d Cir. 2013) ......................................................... 15

*Taggart v. Wells Fargo Home Mortg., Inc.*,
   563 F. App'x 889 (3d Cir. 2014) ...................................................... 15

*Toone v. Wells Fargo Bank, N.A.*,
   716 F.3d 516 (10th Cir. 2013) ......................................................... 15

*Ulbrich v. GMAC Mortgage, LLC*, No. 0:11-cv-62424,
   Dkt. No. 105 (S.D. Fla. May 10, 2013) ........................................... 13

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ........................................................... 8

*White v. Nat'l Football League,*
   822 F. Supp. 1389 (D. Minn. 1993) ................................................. 16

## Rules

Fed. R. Civ. P. 23(h) ....................................................................... 1, 7

Fed. R. Civ. P. 54(d)(2) ....................................................................... 1

## Other Authority

Manual for Complex Litigation § 14.121 (4th ed. 2004) ........................ 11

Manual for Complex Litigation § 24.121 (4th ed. 2004) ........................ 22

Newberg on Class Actions, § 14:6 (4th ed. 2002) ................................. 11

H. Newberg, Attorney Fee Awards § 2.19 (1986) ................................. 24

## <u>INTRODUCTION</u>

Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), and in accordance with Paragraph 18 of this Court's Order Granting Preliminary Approval of Class Action Settlement (ECF No. 89), Plaintiffs Thomas and Patricia Jackson ("Plaintiffs") and Class Counsel bring this motion seeking a combined award of attorneys' fees and expenses to Class Counsel in the amount of $1,500,000, as provided by Paragraph 38 of the Parties' Class Action Settlement Agreement (ECF No. 87-1).[1]  As set forth below, the requested award is fair and reasonable because, among other things:

- The requested amount **represents less than 6.4% of the total monetary relief** available under the Settlement Agreement, which is significantly less than the percentage of the recovery awarded in similar cases;

- The requested amount is **inclusive of both attorneys' fees _and_ expenses**;

- The requested fees and expenses will be paid separately by Wells Fargo Bank, N.A ("WFB") and Wells Fargo Insurance, Inc. ("WFI"), and **will not reduce the recovery to the Class**.  *See Rossi v. Proctor & Gamble Co.*, 2013 WL 5523098, *9 (D.N.J. Oct. 3, 2013) (where the "money paid to attorneys is entirely independent of money awarded to the class, the court's fiduciary role in overseeing the award is greatly reduced, because there is no potential conflict of interest between attorneys and class members.");

- The requested amount was **agreed to by Defendants**, *see ECF No. 87-1 at ¶ 38*; and

- To date, **only two Settlement Class Members (our of more than 2.3 million) have filed an objection to the amount of attorneys' fees and expenses** allowed under the Settlement Agreement, and each of those objections are meritless on their face.

Accordingly, Plaintiffs respectfully request that this Court grant the motion and award the requested fees and expenses to Class Counsel.

---

[1] In its Preliminary Approval Order, the Court appointed Nichols Kaster, PLLP as Class Counsel for settlement purposes.  *See ECF No. 89 at ¶ 6.*

## FACTUAL BACKGROUND

I.   PROCEDURAL HISTORY

A.      The Complaint and Motions to Dismiss

Plaintiffs initiated this action on August 30, 2012 on behalf of themselves and other similarly-situated residential mortgage borrowers, and filed a First Amended Complaint ("FAC") on November 2, 2012.  *ECF Nos. 1, 18.*  The gravamen of the class claims is that WFB charged residential mortgage borrowers a $19 flood zone determination fee that was allegedly unlawfully marked up and/or included a kickback from WFI to WFB in the form of so-called "soft dollars" or "management accounting credits."  *Id. at Counts 2-4.*

On December 20, 2012, Defendants filed two separate motions to dismiss the FAC.  *ECF Nos. 28, 30.*  After extensive briefing (*see ECF Nos. 29, 31, 35, 36, 42, 43*), this Court issued a written order and 43-page opinion on November 6, 2013, which granted in part and denied in part the motions to motions.  *ECF Nos. 46, 47.*  Plaintiffs' breach of contract claim was dismissed to the extent that it (1) sought to advance an independent cause of action for breach of the covenant of good faith and fair dealing; and (2) was predicated on a violation of the reasonable fee authorization in section 4012a(h) of the Flood Disaster Protection Act ("FDPA").  *ECF No. 47.*  In all other respects, Plaintiffs' claims survived the motion to dismiss.  *Id.*

B.      Discovery in this Action and the Related *Morris* Action

At the same time that Defendants filed their motion to dismiss, they filed a motion to stay discovery.  *See ECF No. 26.*  That motion also was fiercely contested and fully briefed.  *See ECF No. 27, 32, 41.*  On September 30, 2013, this Court granted Defendants a limited stay of discovery pending the issuance of the Court's opinion on the motions to dismiss.  *See ECF No. 45.*  Shortly thereafter, on November 6, 2013, the stay was lifted in connection with the issuance

of that Opinion.  *See ECF No. 48.*

Less than ten days later, on November 15, 2013, Plaintiffs served Interrogatories and Requests for Production of Documents on Defendants.  *Richter Decl., ¶ 14.*  Defendants responded to these discovery requests on December 23, 2013, and over the next two months (in advance of mediation), Defendants produced a significant number of documents to Plaintiffs.  *Id.* This production included, among other things, documents relating to flood zone determinations, related charges, soft dollars/management accounting credits, Plaintiffs' loan file, and other matters relevant to the litigation.  *Id.*  All of these documents were reviewed in advance of mediation.  *Id.*

In addition, the Parties negotiated the use of documents produced in a related action in this Court involving Plaintiffs' counsel and Defendants, *Morris v. Wells Fargo Bank, N.A.*, No. 11-CV-00474-DSC (W.D. Pa.).  *Id., ¶ 15.*  In the *Morris* action, WFB and WFI collectively produced over 200,000 pages of documents, some of which related to the issues in the present case.  *Id.*  Class Counsel spent considerable time reviewing these documents,[2] and Wells Fargo agreed to allow Plaintiffs to use those documents for purposes of the mediation in this case.  *Id.*

Prior to the settlement of this action, Plaintiffs also served Rule 30(b)(6) deposition notices on WFB and WFI.  *Id., ¶ 16.*  In addition, Plaintiffs served individual deposition notices for four witnesses: David Franske, Mary Coffin, Alton Porter, and Matthew Wenz.  *Id.*  Although the case was resolved before these depositions were taken, two of those witnesses (Franske and Coffin) also were deposed in the *Morris* action.  *Id.*

---

[2] The review of the *Morris* documents alone took nearly 850 hours.  *Id., ¶ 27.*

C.     **Mediation**

At the same time that it issued its ruling on the motions to dismiss, the Court issued an Order Referring Case to Alternative Dispute Resolution ("ADR Order").  *See ECF No. 50.*  In accordance with the ADR Order, the Parties prepared mediation statements and mediated with the court-appointed mediator, Mr. Louis Kushner, on February 26, 2014. *Richter Decl., ¶ 17.* The mediation lasted a full day, and was conducted in two separate rooms, with Mr. Kushner serving as an intermediary between the Parties in each room.  *Id.*  At all times, the settlement negotiations were conducted at arm's length, and were fully informed by the discovery produced by Defendants and the Court's thorough ruling on Defendants' motions to dismiss.  *Id.*

While the Parties made some progress during the mediation, at the end of the day the Parties had not reached an agreement in principle.  *Id., ¶ 18.*  However, Mr. Kushner continued to mediate the matter by telephone and email.  *Id.*  In the meantime, Class Counsel continued to aggressively litigate the case by (among other things) following-up regarding outstanding written discovery and serving the deposition notices referenced above.  *Id.*

On May 12, 2014, after lengthy negotiations which were conducted at all times through Mr. Kushner, the Parties finally reached an agreement on the material settlement terms.  *Id., ¶ 19.*  Thereafter, the Parties exchanged multiple drafts of a comprehensive Settlement Agreement (as well as the exhibits to the settlement agreement), and executed the Settlement Agreement in August, 2014.  *Id.*  Plaintiffs then filed a motion for preliminary approval of the Settlement (ECF No. 85), which was approved by the Court on October 27, 2014.  *See ECF No. 89.*

D.     **Terms of Settlement Agreement**

The terms of the Settlement Agreement were previously addressed in Plaintiffs' motion for preliminary approval of the Settlement.   In summary, the Settlement provides that Class

Members[3] will be eligible to receive a $9.50 refund upon submitting a claim form, which represents half the amount that WFB charged Settlement Class Members for flood zone determinations ($19) and the vast majority of the challenged "soft dollars" or "management accounting credits" that form the basis of Plaintiffs' markup and kickback claims in this case. *Richter Decl., ¶ 20* (citing *ECF No. 87-1 at ¶¶ 2(cc), 32*). There are 2,315,364 Settlement Class Members who were sent a Notice of Settlement ("Class Notice") and Claim Form. *Richter Decl., ¶ 21.* Accordingly, the Class is eligible to claim approximately $22 million in refunds.[4]

Moreover, in connection with the mediation and settlement of this action, Defendants have indicated that they discontinued the challenged "soft dollars" or "management accounting credits" in connection with flood zone determinations in 2013. *Id., ¶ 21 n.6.* Accordingly, the disputed practice at issue in this lawsuit has ceased. *Id.*

As an added benefit to the Class, Defendants will pay all costs of settlement administration, *see ECF No. 87-1 at ¶ 36*, which currently total $806,057.81 and are anticipated to total at least $1.5 million through the end of the project. *Richter Decl., ¶ 22.* In addition, Defendants will pay all amounts awarded by the Court for attorneys' fees and expenses, in an amount not to exceed $1.5 million. *ECF No. 87-1 at 38.* Under the Settlement, any attorneys' fees and expenses that are awarded by the Court will be paid directly by Defendants to Class

---

[3] The Settlement Class is defined as:

> All persons who obtained a loan from Wells Fargo Bank that was secured by a first or subordinated lien on residential real property who were charged by Wells Fargo Bank for a Flood Hazard Determination between August 30, 2011 and December 31, 2013, inclusive.

*ECF No. 87-1 at ¶ 2(aa).*

[4] 2,315,364 x $9.50 = $21,995,958. However, the actual amount of relief available to the Class is slightly higher because Class Members who had flood zone determinations performed on multiple loans during the class period are entitled to receive refunds in connection with each loan.

Counsel, rather than out of funds used to pay Class Member refunds.  *Richter Decl., ¶ 22.*
Accordingly, the amount of the Class recovery will not be reduced by payments to Class Counsel
for attorneys' fees and expenses.  *Id.*

      **E.**     **Settlement Administration and Response to Class Notice**

      Since this Court preliminarily approved the Settlement, Class Counsel have worked to
ensure that the notice and claims process set out in the Court's preliminary approval order has
been followed.  *Richter Decl., ¶ 23.*  Class Counsel have regularly communicated with the Court-
appointed Claims Administrator (Rust Consulting), reviewed the language and content of the
official settlement website (www.Jacksonsettlement.com), and also reviewed and edited scripts
for the automated telephone line (1-800-371-7303) and for call center representatives.  *Id.*  In
addition, Class Counsel have been fielding inquiries from Class Members, some of whom have
contacted Class Counsel directly and some of whom have been forwarded to Class Counsel by
the Claims Administrator.[5]  *Id.*  Moreover, it is anticipated that Class Counsel will continue to
devote significant resources to monitoring the claims administration process, responding to
inquiries from Class Members, moving for final approval, appearing at the final approval
hearing, and other tasks going forward.  *Id., ¶26 n.9 & ¶34.*

      The deadline for Class Members to opt out or object to the settlement is January 30,
2014.  *Id. ¶24.*   According the most recent status report from the Claims Administrator, there
were only three objections to the Settlement (out of more than 2.3 million Settlement Class

---

[5]  Under the Settlement Agreement, the Claims Administrator arranged for call center
representatives to handle inquiries from Class Members for the first 30 days of settlement
administration (once the Class Notice was mailed), and forwarded any inquiries to Class Counsel
after that initial 30 day period expired on December 31, 2014.  *Id. ¶ 23 n.7* (citing *ECF No. 87-1
at ¶ 22*).

Members) received as of January 12, 2014.  *Id.*   Only two of those objections related to attorneys' fees and expenses.  *Id.*

## ARGUMENT

### I.  CLASS COUNSEL ARE ENTITLED TO RECOVERY OF REASONABLE ATTORNEYS' FEES AND EXPENSES, AS PROVIDED BY THE SETTLEMENT AGREEMENT

It is well-settled that plaintiffs' attorneys in a class action lawsuit may petition the court for compensation for any benefits to the class that result from the attorneys' efforts.  *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).  Rule 23 expressly states that "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the Parties' agreement."  Fed. R. Civ. P. 23(h).  Here, the Parties' Settlement Agreement provides for an award of attorneys' fees and expenses to Class Counsel of up to $1.5 million (to be paid by Defendants).  Thus, the only question is whether this amount is reasonable.

### II.  THE REQUESTED AMOUNT IS REASONABLE ON ITS FACE, AS IT REPRESENTS LESS THAN 6.4% OF THE TOTAL VALUE OF THE SETTLEMENT

Courts in the Third Circuit have held that where, as here, attorneys' fees were separately negotiated and will be paid apart from relief awarded to the class, it is appropriate to use the "percentage of the fund" approach to determine if a requested fee award is reasonable.  *See Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App'x 191, 198 (3d Cir. 2014) ("Granted, this case does not involve a true common fund because [defendant] is paying the fee out of its own pocket and not through the reimbursement fund.  However, where the reality is that the fund and the fee are paid from the same source—in this case, [defendant]—the arrangement 'is, for practical purposes, a constructive common fund,' and courts may still apply the percent-of-fund analysis in calculating attorney's fees.") (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995)); *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 2012 WL 6923367, *2 (E.D. Pa. Oct. 19, 2012) (holding that while the

settlement did not actually create a common fund, it was "akin to a common fund" because the efforts of counsel "have conferred benefits on many" and then using the percentage of the fund analysis as to the requested fee award); *Lake Forest Partners, L.P. v. Sprint Commc'ns Co., L.P.*, 2013 WL 3048919, *2 (W.D. Pa. June 17, 2013) (holding that percentage of the fund analysis was appropriate, even though the attorneys' fee was paid separately by the settling defendant); *Mirakay v. Dakota Growers Pasta Co.*, 2014 WL 5358987, *11 (D.N.J. Oct. 20, 2014) (holding that "[a]lthough the settlement here is not strictly a common fund because the fees were separately negotiated and will be paid apart from money awarded to the class, courts apply many of the same principles as are applied when analyzing a common fund… As such, the Court will analyze common fund factors to determine the reasonableness of the fees requested herein.").[6]  Accordingly, it is appropriate to judge the reasonableness of the requested fee award using the percentage of the fund method.

In determining reasonableness under the "percentage of the fund" analysis, courts must first determine the value of the settlement.  *See, e.g., Lake Forest Partners*, 2013 WL 3048919 at *2 (determining the total value of the settlement before proceeding with percentage of the fund analysis).  That exercise is easy here, as each Class Member is eligible to receive exactly $9.50. Since there are 2,315,364 Class Members, the total monetary relief available to the Class is

---

[6] In fact, Courts at all levels of the federal system, including the Supreme Court and at least nine Circuits, have approved the use of the percentage method.  *See, e.g., Boeing*, 444 U.S. at 478-79; *In re Thirteen Appeals Arising Out of San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307-08 (1st Cir. 1995); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49-50 (2d Cir. 2000); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tanks Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Props. Inc.*, 9 F.3d 513, 515-17 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-50 (9th Cir. 2002); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1268-70 (D.C. Cir. 1993).

approximately $22,000,000.  *See supra* at 5 n. 4.[7]  Moreover, because attorneys' fees and

expenses will be paid by separately and additionally by Defendants (and will not be deducted

from payments to Class Members), it is also appropriate to include the agreed-upon amount of

attorneys' fees and expenses ($1,500,000) in assessing the value of the Settlement, which brings

the total value of the Settlement to approximately $23,500,000.  *See Lake Forest Partners*, 2013

WL 3048919 at *2.

Based on the above, **the requested fee and expense award represents less than 6.4% of**

**the total monetary benefits provided by the Settlement Agreement** ($1,500,000 / $23,500,000 =

0.638).[8]  By any measure, this is a reasonable percentage.  *See Esslinger v. HSBC Bank Nevada,*

*N.A.*, 2012 WL 5866074, *14 (E.D. Pa. Nov. 20, 2012) ("In the Third Circuit, fee awards in

common fund cases generally range from 19% to 45% of the fund") (collecting cases); *Mirakay*,

---

[7] "Under the percentage-of-the-fund method, it is appropriate to base the percentage on the gross cash benefits available for class members to claim, plus the additional benefits conferred on the class by the [defendant's] separate payment of attorneys' fees and expenses, and the expenses of administration." *Lake Forest Partners*, 2013 WL 3048919 at *2 (citing *Boeing*, 444 U.S. at 479); *see also Dewey*, 558 F. App'x at 198 (fee award based on gross value of settlement was justified even though some monies in class member reimbursement fund were unclaimed); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (finding that "[a]n allocation of fees by percentage should … be awarded on the basis of total funds made available whether claimed or not" and reversing district court ruling awarding fees based only on percentage of claims made against the fund).  Although district courts have discretion to reduce the amount of fees awarded where the claims rate is abnormally low, "[c]lass counsel should not be penalized" where "class members' individual damages are simply too small to motivate [some of] them to submit claims."  *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 178 (3d Cir. 2013).  In any event, the Claims Administrator already had received more than 230,000 claims as of its last status report on January 12, 2015, and the claims period remains open.  *Richter Decl., ¶ 25.* This claims rate compares favorably to the norm in class cases, particularly given the low dollar amounts at issue.  *See Gascho v. Global Fitness Holdings, LLC*, 2014 WL 1350509, *30 (S.D. Ohio April 4, 2014) (crediting expert testimony that "response rates in class actions generally range from one to 12 percent with a median response rate, and a normal consumer response rate, of approximately five to eight percent").

[8] If expenses of settlement administration ($1.5 million) are added to the total value of the Settlement, as instructed in *Lake Forest Partners*, 2013 WL 3048919 at *2, the percentage is even lower, and comes to 6.0% ($1,500,000 / [$23,500,000 + $1,500,000] = .06).

2014 WL 5358987 at *12 (noting that "[a]ttorneys' fees in the 30% range are not uncommonly awarded in the Third Circuit, and courts in this Circuit have awarded fees of more than 30%.") (citing *Rowe v. E.I. DuPont de Nemours & Co.*, 2011 WL 3837106 at *22 (D.N.J. Aug. 26, 2011); and *Milliron v. T-Mobile USA, Inc.*, 2009 WL 2009 WL 3345762, at *8 (D.N.J. Sept. 10, 2009), *as amended* (Sept. 14, 2009), *aff'd*, 423 F. App'x 131 (3d Cir. 2011)).

## III.   THE *GUNTER* FACTORS SUPPORT THE REQUESTED FEE AWARD

In analyzing "percentage of the fund" fee requests, courts in this circuit apply the factors set forth by the Third Circuit in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000).   Those factors include:

> 1) The size of the fund and the number of persons benefited; 2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; 3) the skill and efficiency of the attorneys involved; 4) the complexity and duration of the litigation; 5) the risk of nonpayment; 6) the amount of time devoted to the case by plaintiffs' counsel; and 7) the awards in similar cases.

*Id.* at 195 n. 1.  These factors "need not be applied in a formulaic way… and in certain cases, one factor may outweigh the rest."  *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005). Applied here, these factors weigh strongly in favor of the requested fees and expenses.

### A.   The Size of the Fund and Number of Persons Benefited Supports the Requested Award

With respect to the first factor, both the size of the fund and number of persons benefitted support the requested fees and expenses.  As discussed above, Class Counsel seek less than 6.4% of the value of the settlement, which is significantly less than the percentage awarded in other class actions.  Given the large number of Class Members here (2,315,364), *the requested fees and expenses amount to less than $0.65 for each Class Member* who is entitled to claim benefits under the Settlement ($1,500,000 / 2,315,364 = $0.648).

As noted above, the requested fees and expenses will be paid separately by Defendants, and will not reduce the amount that Class Members receive.  Moreover, the $9.50 refund available to Class Members is half the $19 fee that Defendants charged Class Members for flood zone determinations, and the vast majority of the alleged markup or kickback.  *See Richter Decl.,* *¶ 20.*  For all of these reasons, the first *Gunter* factor weighs heavily in favor of the requested fees and expenses.[9]

### B.   The Absence of Objections Weighs in Favor of the Requested Award

With respect to the second factor, there have been only two objections to the attorneys' fees and expenses provided by the Settlement Agreement.  This also weighs in favor of granting the requested fees and expenses.  *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 305 (holding that where only two class members objected out of a class of 300,000, this fact weighed in favor of the requested fee award); *accord, Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 338 (E.D. Pa. 2007) (holding that "the total absence of objections to the requested fees weighs in favor of finding that the percentage of the settlement fund requested is appropriate").  Indeed, the miniscule number of objections is particularly compelling here because (1) the number of Class Members is very large (more than 2.3 million) and the Class Notice explicitly

---

[9] The Manual for Complex Litigation provides that "[g]enerally, the factor given the greatest emphasis [in awarding a percentage of the recovery] is the size of the [recovery] created, because [the recovery] 'is itself the measure of success … [and] represents the benchmark from which a reasonable fee will be awarded.'"  Manual for Complex Litigation § 14.121 (4th ed. 2004) (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions, § 14:6, at 547, 550 (4th ed. 2002)); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("critical factor is the degree of success obtained").

advised Class Members of the amount of the requested fees and expenses.[10]  ***The objections to attorneys' fees and expenses are literally one in a million***.

Moreover, the objections that have been asserted are exceedingly weak.  One of those objections (from Class Member Muvjot Singh) simply seeks documentation supporting Class Counsel's request for attorneys' fees.  *See Richter Decl., Ex. 4.*  That documentation is being supplied with this motion.  The other objection (from Class Member Wei Cyrus Hung) states that Class Counsel's legal fees should be limited to 25% of the Class fund.  However, as noted above, Class Counsel's legal fees are actually ***less*** than 25% – indeed, they are less than 6.4% of the total monetary relief.  *See supra* at 9.

### C.     The Skill and Efficiency of the Attorneys Involved Weighs in Favor of the Requested Award

The third *Guther* factor – the skill and efficiency of the attorneys involved – also weighs in favor of the requested fees and expenses.  As noted above, Plaintiffs' undersigned counsel, Nichols Kaster, PLLP ("Nichols Kaster"), successfully defeated two separate motions to dismiss in this case, which were denied in substantial part by the Court.  *See ECF No. 47.*  In addition, Nichols Kaster, PLLP ("Nichols Kaster") has successfully litigated and resolved several other consumer class actions against large mortgage lenders and servicers.  *Richter Decl., ¶¶ 7-10.* For example, Nichols Kaster previously was appointed class counsel in a class action lawsuit against JPMorgan Chase Bank, N.A. and Chase Home Finance, LLC (collectively, "Chase") relating to Chase's mortgage servicing practices in connection with flood insurance.  *Richter Decl., ¶ 8* (citing *Hofstetter v. Chase Home Fin., LLC*, 2011 WL 1225900 (N.D. Cal. Mar. 31,

---

[10] The Class Notice explicitly stated:

> **Who Represents Me?** The Court has appointed Nichols Kaster, PLLP as Class Counsel Under the terms of the settlement, they will be paid legal fees and expenses in the amount of $1.5 million (subject to the approval of the Court).

*ECF No. 87-1 at Ex. 2.*

2011)).  Following the court's class certification ruling (which was contested by Chase), Nichols Kaster successfully negotiated a landmark nationwide settlement of that action, which was approved by the Court.  *Richter Decl., ¶ 8.*[11]  Nichols Kaster also recently won a contested class certification motion in *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953 (N.D. Cal. June 13, 2014), which also involves flood insurance, and later reached a class action settlement in that action as well.  *Richter Decl., ¶ 9.*  In addition, Nichols Kaster has successfully negotiated class action settlements and been appointed class counsel for settlement purposes in numerous other consumer cases involving major financial institutions and other large companies.[12]

Moreover, Nichols Kaster was able to efficiently handle this action based on its familiarity with Defendants' business practices and prior work in connection with the related *Morris* action before this Court (which also involves flood insurance).  As noted above, Defendants agreed that documents that were produced by WFB and WFI in the *Morris* action could be used for mediation purposes in this case.  *See supra* at 3.  This provided a significant benefit to the Class, as Nichols Kaster spent nearly 850 hours reviewing over 200,000 pages of

---

[11] At the final approval hearing on November 7, 2011, the Court in *Hofstetter* complimented counsel for their efforts, and stated:

> I want to say that both sides here have performed at an admirable level. And I wish that the lawyers of all cases would perform at your level. I say this to both of you, because you have you have been of assistance to the Court.

*Id.* (citing *Hofstetter*, Dkt. No. 260 at p.38); *see also Hofstetter*, Dkt. 282 at p.8 (Feb. 2, 2012) ("I want to congratulate you. You're both -- both sides have been represented by what I regard as models of excellent professionals.").

[12] *Id.,* ¶¶ *10 – 11* (citing, *inter alia, Holmes v. Bank of America, N.A.*, No. 3:12-cv-00487, Dkt. 203 (W.D.N.C. Jan. 15, 2015) (granting final approval of class action settlement and previously appointing Nichols Kaster as class counsel); *Cook v. RBS Citizens, N.A.*, No. 1:11-cv-00268, Dkt. No. 78 (D.R.I. Oct. 9, 2014) (same); *Arnett v. Bank of America, N.A.*, No. 3:11-cv-01372, Dkt. No. 288 (D. Or. Sept. 18, 2014) (same); *Casey v. Citibank, N.A.*, No. 5:12-cv-00820, Dkt. No. 222 (N.D.N.Y. Aug. 21, 2014) (same); *Farmer v. Bank of America, N.A.*, No. 5:11-cv-00935, Dkt. No. 140 (W.D. Tex. Oct. 21, 2013) (same); *Ulbrich v. GMAC Mortgage, LLC*, No. 0:11-cv-62424, Dkt. No. 105 (S.D. Fla. May 10, 2013) (same).

documents in the *Morris* action (some of which related to the issues in this case), and did not need to start from scratch in this case when evaluating the case for mediation purposes and preparing for mediation.  *Richter Decl., ¶ 27.*

> **D.** **The Complexity and Duration of the Litigation Weighs in Favor of the Requested Award**

The fourth *Gunter* factor – the complexity and duration of the litigation – also weighs in favor of the requested fees and expenses.  The claims in this action involved complicated accounting issues relating to Defendants' so-called "soft dollars" program and the management accounting credits that were exchanged between WFI and WFB in connection with that program. Moreover, the case also raised a number of threshold legal issues which required significant research and analysis, as reflected by the extensive briefing on the motions to dismiss and the Court's 43-page opinion in connection with those motions.  The complexity of these issues amply supports the requested award, particularly in light of the skillful and efficient manner in which Class Counsel handled those issues and brought the case to a successful resolution on behalf of the Class.

The fact that this action was initiated in August of 2012, nearly two and a half years ago, further supports the requested attorneys' fees and expenses.  *See Gascho*, 2014 WL 1350509, at *21 (approving settlement and requested attorneys' fees where the "action was vigorously litigated for two and one-half years prior to settlement and involved extensive motion practice and discovery").   As this Court is well-aware from the record in this case, the issues in this case were fiercely contested by both sides.  The Parties did not even begin to negotiate until after the motions to dismiss were decided and discovery was produced.  Based on the Court's order, the discovery provided in this case, and the documents previously produced in the *Morris* action,

Class Counsel were able to intelligently analyze the size and scope of the class claims, as well as the strength and weaknesses of those claims, prior to negotiating a settlement.

In short, this is not a case where the Parties rushed to the settlement table or hastily negotiated a deal. To the contrary, there was significant motion practice and discovery prior to mediation, and it took six months from the date of mediation (February 13, 2014) before the Parties were able to reach a comprehensive written settlement agreement that they could present to the court for preliminary approval (on August 15, 2014).

### E. The Risk of Nonpayment Was Substantial

The fifth *Gunter* factor – the risk of nonpayment – also supports the requested award. Although this Court denied (in substantial part) Defendants' motions to dismiss and found that Plaintiffs had stated "plausible" claims, it is uncertain whether Plaintiffs would have prevailed on the merits of those claims based on an evidentiary record. Notably, since 2010 alone, several circuit courts have affirmed orders dismissing claims under the Real Estate Settlement Procedures Act ("RESPA") against WFB or Wells Fargo Home Mortgage, including the Third Circuit on three separate occasions. *See Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339 (4th Cir. 2014); *Taggart v. Wells Fargo Home Mortg., Inc.*, 563 F. App'x 889 (3d Cir. Apr. 23, 2014); *Taggart v. Norwest Mortg., Inc.*, 539 F. App'x 42 (3d Cir. 2013); *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516 (10th Cir. 2013); *McCrimmon v. Wells Fargo Bank, N.A.*, 516 F. App'x 372 (5th Cir. 2013); *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655 (8th Cir. 2012); *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549 (9th Cir. 2010); *Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119 (3d Cir. 2010). While the issues in those cases were different, these decisions highlight the challenges associated with pursuing these types of claims against the Defendants in this case.

15

Throughout the litigation, Defendants have maintained that no actual dollars or other assets were transferred from WFI to WFB, and the so-called "soft dollars," also known as "management accounting credits" were only an internal accounting entry designed to help management identify the source of revenue and had no independent value.  If this action had proceeded through litigation, this would have been a hotly contested fact issue, and both sides likely would have retained testifying expert witnesses who would have disagreed about the accounting implications of Wells Fargo's "soft dollars" or "management accounting credits" program.  Defendants also have asserted numerous legal defenses to Plaintiffs' claims.  Moreover, Defendants almost certainly would have opposed certification of a class for litigation purposes in this case.[13]

These risks are highly relevant to the requested award because Class Counsel handled the case on a contingent fee basis, without any guarantee that they would be compensated for their time or reimbursed for their expenses.  *Richter Decl., ¶ 28.*  It is only because Class Counsel agreed to accept these risks that they were able to represent Plaintiffs and achieve a favorable class settlement (after 2½ years) in this case.  Accordingly, this factor also weighs in favor of the requested award.

---

[13] In the context of a settlement class, certification is more easily attained because the court need not inquire whether a trial of the action would be manageable on a class-wide basis.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."); *accord, Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 303 (3d Cir. 2011) (*en banc*).  Thus, "[t]he requirements for class certification are more readily satisfied in the settlement context than when a class has been proposed for the actual conduct of the litigation."  *White v. Nat'l Football League*, 822 F. Supp. 1389, 1402 (D. Minn. 1993) (citations omitted); *see also Horton v. Metropolitan Life Ins. Co.*, No. 93-1849-CIV-T-23A, 1994 U.S. Dist. LEXIS 21395, at *15 (M.D. Fla. Oct. 25, 1994).

**F.      Class Counsel Have Devoted Substantial Time and Effort to this Action
and the Related *Morris* Action**

The sixth *Gunter* factor also supports the requested award, as Class Counsel have
invested significant time and effort in this action and the related *Morris* action.[14]  Specifically, in
connection with the present action, Class Counsel (1) investigated the facts and law relating to
Plaintiffs' claims before initiating this action; (2) drafted a well-pleaded Complaint and
Amended Complaint; (3) met and conferred with Defendants' counsel at the start of the case
pursuant to Rule 26(f), and assisted in preparing a Rule 26(f) Report to the Court; (4) engaged in
extensive briefing in connection with two separate and independent motions to dismiss filed by
WFB and WFI; (5) also filed a vigorous opposition to Defendants' motion to stay discovery; (6)
served Interrogatories and Requests for Production after Defendants' motions to dismiss were
denied (in substantial part), and separately prepared search terms for electronically-stored
information ("ESI"); (7) reviewed each of the documents (as well as the information) produced
by Defendants in this case; (8) served two Rule 30(6)(6) notices and four deposition notices for
individual witnesses; (9) negotiated a protective order relating to the use of the confidential
documents and information produced by Defendants in this case, and also negotiated a separate
agreement relating to the use of documents produced in the *Morris* case for mediation purposes;
(10) prepared a lengthy mediation statement; (11) attended a full-day mediation with Mr.
Kushner and participated in several follow-up conferences with Mr. Kushner and opposing
counsel; (12) negotiated the details of a comprehensive Settlement Agreement over a period of
six months and drafted the Settlement Agreement; (13) prepared the exhibits to the Settlement
Agreement (including the Class Notice, Claim Form, and proposed Preliminary Approval
Order); (14) prepared a motion for preliminary approval of the Settlement; (15) regularly

---

[14] Class Counsel's lodestar is discussed in Section V below.  *See infra* at 20-23.

communicated with the Claims Administrator to ensure a smooth notice and claims process following the Court's preliminary approval order; (16) reviewed the language and content of the settlement website; (17) reviewed and edited scripts for the automated telephone hotline and for call center representatives during the 30-day period that the Claims Administrator staffed the hotline; (18) responded to Class Members who contacted Class Counsel directly or who were forwarded to Class Counsel by the Claims Administrator after the 30-day period for call center representatives expired; (19) communicated with the named Plaintiffs throughout the litigation; and (20) prepared the present motion. *Richter Decl., ¶ 26 & Exs. 1-2.* In addition, Class Counsel will devote further time and effort to preparing a motion for final approval of the Settlement, appearing at the final approval hearing, responding to ongoing inquiries from Class Members going forward, addressing any disputes relating to submitted claims, and monitoring claims processing and the distribution of settlement payments by the Claims Administrator. *Id. ¶ 26 n.9.*

Moreover, aside from this work in connection with the present action, Class Counsel also expended significant time and effort in connection with the related *Morris* action. *Id., ¶ 27 & Ex. 3.* Of particular relevance here, Class Counsel spent nearly 850 hours reviewing more than 200,000 pages of documents that were produced by Defendants in the *Morris* action, and benefitted from that prior work by using some of those documents for mediation purposes in this case. *Id.* These combined efforts amply support the requested award in this case, and demonstrate that the fees which will paid to Class Counsel under the Settlement have been well-earned.

### G.     The Requested Award Is Reasonable in Comparison to the Amounts Typically Awarded in Other Class Cases

Finally, the seventh *Gunter* factor – awards in similar cases – also supports the requested award.  As discussed above, the requested award represents less than 6.4% of the value of the Settlement, which is far less than the percentage that is typically approved in other class cases. *See supra* at 9.  Even in "mega-fund" cases, where the class recovery is in the hundreds of millions or billions of dollars, it is typical for courts to approve a 7% award.  *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 2012 WL 6923367, *7 (E.D. Pa. Oct. 19, 2012) (collecting and analyzing "mega-fund" fee awards ranging from 15% to 4.8%, and concluding that the requested 7% fee award was a reasonable amount given the "mega-fund" nature of the settlement).  Moreover, in another recent case involving Plaintiffs' undersigned counsel and a defendant bank, the court approved a similar percentage fee award to in connection with a claims-made settlement.  *See Casey v. Citibank, N.A.*, 2014 WL 4120599 (N.D.N.Y. Aug. 21, 2014)   (overruling objection to requested $7 million fee in connection with claims-made settlement in which $110 million in relief was available to class members).  The same result should apply here.

### IV.     APPLICATION OF THE *PRUDENTIAL* FACTORS SUPPORTS THE REQUESTED AWARD.

In addition to the *Gunter* factors discussed above, courts in the Third Circuit consider the factors articulated by the Third Circuit in *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283 (3d Cir. 1998).  These factors are (1) whether the benefits accruing to the class are attributable to the efforts of class counsel or other groups, such as government agencies; (2) whether the fee is comparable to the fee that would have been negotiated had the case been subject to a contingent fee agreement; and (3) whether the settlement agreement contains innovative terms and conditions.  These factors further support the requested award in this case.

With respect to the first *Prudential* factor, the results obtained are solely the result of Class Counsel's efforts.  Class Counsel is not aware of any other litigation against Defendants alleging the same or similar allegations with respect to flood zone determination fees, or of any governmental agency that was investigating Defendants or any other party for the same or similar practices in connection with flood zone determinations.

The second *Prudential* factor also weighs in favor of the requested award.  Here, the requested award is far ***less*** than would have been negotiated in a typical contingent fee arrangement.  As discussed above, Class Counsel's requested award is less than 6.4% of the total value of the Settlement.  In a standard contingent fee arrangement, the attorneys receive a much higher percentage (typically 33%) as a fee, and are entitled to costs and expenses in addition to the negotiated fee.

Finally, the third *Prudential* factor also supports the requested award, as the Settlement in this case provides first-of-a-kind relief for the practices at issue in connection with flood zone determinations.  As noted above, Plaintiffs are unaware of any other case against Defendants relating to charges for flood zone determinations, much less any other case that has been successfully resolved on a class-wide basis.  Thus, the relief provided by the Settlement is unique.

## V.      A LODESTAR CROSS-CHECK SUPPORTS THE REQUESTED AWARD.

The Third Circuit recommends, but does not require, that district courts using the percentage of the fund method conduct a lodestar cross-check on the reasonableness of the fee award.  *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 183 n. 4 (3d Cir. 2005) (affirming district court's percentage of the fund fee award, even though district court did not conduct lodestar cross-check); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 310 (E.D. Pa.

2003) (holding that *Gunter* recommends but does not require lodestar cross-check).   Where district courts do conduct a lodestar cross-check, the Third Circuit has cautioned that this cross-check "does not trump the primary reliance on the percentage of the common fund method."   *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 307.   Moreover, the lodestar cross-check "need entail neither mathematical precision nor bean counting," and the "resulting multiplier need not fall within any pre-defined range, provided that the District Court's analysis justifies the award."   *Id*. at 306-07.   Thus, the "lodestar cross-check is only meant to be a cursory overview."   *O'Keefe*, 214 F.R.D. at 310.

In the present case, Class Counsel's current lodestar in this action is $261,537.50, which is based on 610.2 attorney and professional staff hours.   *See Richter Decl., ¶ 30.*[15]   As explained below, this lodestar amount does ***not*** include time that Class Counsel will spend on this action after the filing of this motion, and does ***not*** include time that Class Counsel spent reviewing documents or performing other tasks in the related *Morris* action.   However, even if the Court were to consider only the lodestar amount in this action to date (and not give Class Counsel any credit for further work that will be performed in this action or prior work that was performed in the related *Morris* action), the requested award still would be reasonable.

Based on the existing lodestar in this action to date ($261,537.50), the lodestar cross-check results in a multiplier of 5.68, after accounting for Class Counsel's litigation costs ($13,286.31) in Section VI, *infra* at 24, and deducting them from the $1.5 million award.[16] While this multiplier is toward the higher end of multipliers that have been approved in this circuit, it is significantly below some multipliers that have been approved.   For example, the

---

[15] Summary descriptions of the work performed by each attorney and professional staff member who spent more than ten hours on the case, together with summaries of their backgrounds, are provided in the accompanying declaration from Class Counsel.  *See Richter Decl. Ex. 2.*

[16] [1,500,000 - $13,286.31] / $261,537.50 = 5.68.

court approved an attorney fee award that produced a multiplier of 15.6 in *Stop & Shop Supermarket Co.v. SmithKline Beecham Corp.*, 2005 WL 1213926, *18 (E.D. Pa. May 19, 2005). As is the case here, the court in *Stop & Shop* held that the requested fee was justified because, as a percentage of the total monetary relief, it was merely 20%. *Id.* Moreover, the court also held that the high multiplier was justified because of a lack of objections to the settlement. *Id.* Given that Class Counsel in this case are requesting less than 6.4% (as opposed to 20%) of the total monetary relief, and the lodestar cross-check produces a multiplier of 5.68 (as opposed to 15.6), the requested award in this case is even more reasonable than it was in *Stop & Shop*.

Moreover, the Third Circuit and other courts in this circuit have approved similar multipliers. For example, in *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173 (3d Cir. 2005), the Third Circuit stated that the fee award challenged on appeal "would appear to lead to a multiplier in the mid-single digits," *id.* at 183 n. 4, and then affirmed the fee award without further discussion of the multiplier. Similarly, in *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005), the Court approved a fee award that resulted in a multiplier of 6.96. Further, the court in *O'Keefe* found that multiplier of 6.08 was not "unreasonable." *O'Keefe*, 214 F.R.D. at 311. Accordingly, the multiplier resulting from the lodestar cross-check in this case is well within the range of multipliers that have been approved.

The multiplier in this case merely reflects the fact that Class Counsel was highly efficient in litigating and resolving this potentially drawn out litigation. Class Counsel should not be punished for their efficiency. As the Third Circuit stated in *Gunter*, one purpose of the percentage of the fund approach is "to encourage early settlements by not punishing efficient counsel…". *Gunter*, 223 F.3d at 198 (*quoting* Manual for Complex Litigation, § 24.121, at 207).

Applying this principle, the Third Circuit held that "[p]rocuring a settlement, in and of itself, is never a factor that the district court should rely upon to reduce a fee award." *Id*. Moreover, "[t]o utilize such a factor would penalize efficient counsel, encourage costly litigation, and potentially discourage able lawyers from taking such cases." *Id*. These important public policies would be undermined by reducing Class Counsel's relatively modest request for an award representing less than 6.4% of the total monetary relief in this case.

Indeed, it would be particularly unfair to reduce the requested award based on a lodestar cross check in this case for two reasons. <u>First</u>, Class Counsel's existing lodestar total is an ***interim*** figure, and does not include time that will be spent by Class Counsel on future case-related work (e.g., preparing a final approval motion, appearing at the final approval hearing, responding to ongoing inquiries from Class Members, addressing any disputes relating to submitted claims, and monitoring claims processing and the distribution settlement payments). <u>Second</u>, Class Counsel's lodestar total in this action does not include any time spent on the related *Morris* action, even though documents that were reviewed by counsel in *Morris* were used and relied upon for mediation purposes in this case. Class Counsel's current lodestar in *Morris* is $1,158,142.50, and as of the date of this motion, Class Counsel have not been compensated for any of that time. *Richter Decl., ¶¶ 28, 35.* Even if one only considers the time spent reviewing documents in the *Morris* case, the lodestar value of that time alone is $216,860. *Richter Decl., ¶ 35 & Ex. 3.* If this time from *Morris* is included, which it should be because the Class benefited directly from this time and effort, Class Counsel's total existing lodestar would be $478,397.50 ($261,537.50 + $216,860), and the resulting multiplier would be 3.11, after accounting for litigation costs.[17] This is just a fraction of the multipliers approved in this circuit in the cases discussed above. Accordingly, the requested award is also reasonable when

---

[17] [$1,500,000 - $13,286.31] / $ 478,397.50 = 3.11.

applying a lodestar cross check.

**VI.    THE REASONABLENESS OF THE REQUESTED AWARD IS FURTHER DEMONSTRATED BY THE FACT THAT IT IS INCLUSIVE OF EXPENSES**

The reasonableness of the requested $1.5 million award to Class Counsel is further demonstrated by the fact that it is inclusive of both attorneys' fees ***and expenses***.  In the Third Circuit, requests by counsel for reimbursement of expenses (in addition to attorneys' fees) in class cases are commonly granted as a matter of course.  *See*, e.g., *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 106 (E.D. Pa. 2013) (awarding costs incurred by class counsel); *Mirakay*, 2014 WL 5358987 at *14 (same).   Here, Class Counsel have incurred $13,286.31 of expenses as of the date of this motion.  These expenses are summarized by category as follows:

| Category | Description | Costs Incurred |
|---|---|---|
| Mediation Fees | Costs associated with mediation | $5,100.00 |
| Filing Fees | Costs associated with pro hac vice admission and other court filings | 498.15 |
| PACER | Costs associated with Public Access to Court Electronic Records (PACER) usage | 47.40 |
| Postage | Costs associated with postage | 4.71 |
| Service Fees | Costs associated with service of process | 210.00 |
| Federal Express | Costs associated with shipping | 38.97 |
| Travel | Costs associated with travel and client meetings[18] | 6,587.08 |
| Westlaw | Costs associated with legal research | 800.00 |
| **TOTAL** | | **$13,286.31** |

*See Richter Decl. ¶ 38*.   These expenses are standard expenses in class litigation.  *See* H. Newberg, ATTORNEY FEE AWARDS § 2.19 at 69 (1986).   The fact that these expenses are included in the $1,500,000 amount sought by Class Counsel further demonstrates that the requested amount is reasonable and appropriate.

---

[18] Includes travel booked in connection with upcoming final approval hearing on March 5, 2014.

## CONCLUSION

For the reasons set forth above, Plaintiffs and Class Counsel respectfully request that the Court grant their motion, and award attorneys' fees and expenses to Class Counsel in the amount of $1,500,000, as provided by the Settlement Agreement.


Dated: January 16, 2015

*/s/ Kai Richter*
Kai H. Richter, MN Bar No. 0296545*
E. Michelle Drake, MN Bar No. 0387366*
Daniel C. Bryden, MN Bar No. 0302284
  *(admitted *pro hac vice*)
Michele R. Fisher, MN Bar No. 303069
  (admitted to practice in W.D.Pa.)
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
Email: krichter@nka.com
        drake@nka.com
        dbryden@nka.com
        fisher@nka.com


***ATTORNEYS FOR PLAINTIFFS AND THE
SETTLEMENT CLASS***

25