## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS M. JACKSON and PATRICIA G. JACKSON, as individuals and as representatives of the classes, | Civil Action No.: 2:12-cv-01262-DSC |
| Plaintiffs, | **Judge David Stewart Cercone** |
| | **ELECTRONICALLY FILED** |
| v. | |
| WELLS FARGO BANK, N.A. and WELLS FARGO INSURANCE, INC. | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................2

   I.   OVERVIEW OF LAWSUIT AND SETTLEMENT .................................................2

      A.  Nature of Claims Asserted ..............................................................2

      B.  Procedural History .........................................................................2

      C.  Settlement Terms ............................................................................3

   II.  CLASS NOTICE AND REACTION OF THE SETTLEMENT CLASS ...................4

ARGUMENT ........................................................................................................................6

   I.   STANDARD OF REVIEW ...................................................................................6

   II.  THE SETTLEMENT SATISFIES THE RELEVANT *GIRSH* FACTORS ..............6

      A.  The Complexity, Expense and Likely Duration of the Litigation ...............6

      B.  The Reaction of the Class to the Settlement ..................................8

      C.  The Stage of the Proceedings and the Amount of Discovery Completed......9

      D.  The Risks of Establishing Liability and Damages........................10

      E.  The Risks of Maintaining the Class Action Through Trial.............11

      F.  The Ability of the Defendants to Withstand a Greater Judgment.............12

      G.  The Range of Reasonableness of the Monetary Relief in Light of the Best Possible Recovery and All the Attendant Risks of Litigation..................................12

  III.  OTHER FACTORS ALSO WEIGH IN FAVOR OF APPROVING THE SETTLEMENT ........14

  IV.  THE OBJECTIONS TO THE SETTLEMENT SHOULD BE OVERRULED........15

      A.  The Hung Objection Is Meritless.................................................15

          1.  The Claims Process Established by the Settlement Is Reasonable and Appropriate ...............................................................15

          2.  Class Counsel's Fee Request Is Also Reasonable and Appropriate. ......18

          3.  The Class Representatives Are Adequate .............................23

B. The Diaz/Nahhas Objection Is Duplicative of Hung's Meritless Objection to the Claims-Made Settlement Structure ................................................................................24

C. The *Pro Se* Objections Are Meritless .........................................................................24

**CONCLUSION** ................................................................................................................25

# TABLE OF AUTHORITIES

<u>Cases</u>

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ................................................................................................ 11

*Arthur v. Sallie Mae, Inc.,*
    2012 WL 90101 (W.D. Wash. Jan 10, 2012) ........................................................ 17

*Austin v. Penn. Dep't of Corr.,*
    876 F. Supp. 1437 (E.D. Pa. 1995) ....................................................................... 8

*Bell Atl. Corp. v. Bolger,*
    2 F.3d 1304 (3d Cir. 1993) ................................................................................ 8-9

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ............................................................................................. 19

*Briggs v. Countrywide Funding Corp.,*
    188 F.R.D. 645 (M.D. Ala. 1999) ......................................................................... 12

*Casey v. Citibank, N.A.,*
    2014 WL 4120599 (N.D.N.Y. Aug. 21, 2014) ............................................... 17, 19

*Dewey v. Volkswagen Aktiengesellschaft,*
    558 F. App'x 191 (3d Cir. 2014) .......................................................................... 19

*Ehrheart v. Verizon Wireless,*
    609 F.3d 590 (3d Cir. 2010) ................................................................................. 6

*Fisher Bros. v. Phelps Dodge Indus., Inc.,*
    604 F. Supp. 446 (E.D. Pa. 1985) ....................................................................... 13

*Fladell v. Wells Fargo Bank, N.A.,*
    2014 WL 5488167 (S.D. Fla. Oct. 29, 2014) .................................................. 16-17

*Gascho v. Global Fitness Holdings, LLC,*
    2014 WL 1350509 (S.D. Ohio April 4, 2014) ....................................................... 9

*Girsh v. Jepson,*
    521 F.2d 153 (3d Cir. 1975) ............................................................................. 1, 6

*Golon v. Ohio Sav. Bank,*
    1999 WL 965593 (N.D. Ill. Oct. 15, 1999) .......................................................... 12

*Gomez v. Wells Fargo Bank, N.A.,*
    676 F.3d 655 (8th Cir. 2012) ............................................................................... 10

*Gutierrez v. Wells Fargo Bank, N.A.,*
  -- F. App'x. --, 2014 WL 5462407 (9th Cir. Oct. 29, 2014) ...................................... 7

*Gutierrez v. Wells Fargo Bank, N.A.,*
  704 F.3d 712 (9th Cir. 2012) ........................................................................... 7

*Hall v. AT&T Mobility, LLC,*
  2010 WL 4053547 (D.N.J. Oct. 13, 2010) ....................................................... 7

*Hyderi v. Washington Mut. Bank, FA,*
  235 F.R.D. 390 (N.D. Ill. 2006) ..................................................................... 12

*In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.,*
  263 F.R.D. 226 (E.D. Pa. 2009) ...................................................................... 9

*In re AremisSoft Corp. Sec. Litig.,*
  210 F.R.D. 109 (D.N.J. 2002) .......................................................................... 8

*In re Baby Prods. Antitrust Litig.,*
  708 F.3d 163 (3d Cir. 2013) ......................................................................... 19

*In re Cendant Corp. Litig.,*
  264 F.3d 201 (3d Cir. 2001) ............................................................. 1, 8, 9, 14

*In re Processed Egg Products Antitrust Litig.,*
  284 F.R.D. 249 (E.D. Pa. 2012) .................................................................... 18

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
  148 F.3d 283 (3d Cir. 1998) ..................................................................... 6, 21

*In re Rite Aid Corp. Sec. Litig.,*
  396 F.3d 294 (3d Cir. 2005) ........................................................................... 9

*In re Schering-Plough Corp. Enhance ERISA Litig.,*
  2012 WL 1964451 (D.N.J. May 31, 2012) ................................................... 12

*In re Warfarin Sodium Antitrust Litig.,*
  212 F.R.D. 231 (D. Del. 2002) ..................................................................... 14

*Jones v. ABN Amro Mortgage Grp., Inc.,*
  606 F.3d 119 (3d Cir. 2010) ......................................................................... 11

*Krzesniak v. Cendant Corp.,*
  2007 WL 1795703 (N.D. Cal. June 20, 2007) .............................................. 23

*Lake Forest Partners, L.P. v. Sprint Commc'ns Co., L.P.,*
  2013 WL 3048919 (W.D. Pa. June 17, 2013) ......................................... 20, 21

*Levine v. North American Mortg.*,
    188 F.R.D. 320 (D. Minn. 1999) .................................................................. 12

*Lopez v. Youngblood*,
    2011 WL 10483569 (E.D. Cal. Sept. 2, 2011)........................................ 21

*Martinez v. Wells Fargo Home Mortg., Inc.*,
    598 F.3d 549 (9th Cir. 2010) ............................................................ 10-11

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007) .................................................................. 20

*McCoy v. Health Net, Inc.*,
    569 F. Supp. 2d 448 (D.N.J. 2008) .......................................................... 7

*McCrimmon v. Wells Fargo Bank, N.A.*,
    516 F. App'x. 372 (5th Cir. 2013).......................................................... 10

*Milliron v. T-Mobile USA, Inc.*,
    2009 WL 3345762 (D.N.J. Sept. 10, 2009) ........................................... 16

*Minter v. Wells Fargo Bank, N.A.*,
    762 F.3d 339 (4th Cir. 2014) ................................................................. 10

*Rubin v. Assicurazioni Generali S.P.A.*,
    290 F. App'x 376 (2d Cir. 2008) ........................................................... 16

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) .................................................... 16

*Shames v. Hertz Corp.*,
    2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) ........................................ 16

*Stoetzner v. U.S. Steel Corp.*,
    897 F.2d 115 (3d Cir. 1990) ..................................................................... 8

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011) .................................................................. 11

*Taggart v. Norwest Mortg., Inc.*,
    539 F. App'x. 42 (3d Cir. 2013)............................................................. 10

*Taggart v. Wells Fargo Home Mortg., Inc.*,
    563 F. App'x. 889 (3d Cir. 2014).......................................................... 10

*Toone v. Wells Fargo Bank, N.A.*,
    716 F.3d 516 (10th Cir. 2013) .............................................................. 10

*Trombley v. Nat'l City Bank,*
    759 F. Supp. 2d 20 (D.D.C. 2011) ...................................................................... 16

*Varacallo v. Mass. Mut. Life Ins. Co.,*
    226 F.R.D. 207 (D.N.J. 2005) ............................................................................ 9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
    396 F.3d 96 (2d Cir. 2005) ............................................................................... 16

*Waters v. Int'l Precious Metals Corp.,*
    190 F.3d 1291 (11th Cir.1999) ......................................................................... 20

*White v. Nat'l Football League,*
    822 F. Supp. 1389 (D. Minn. 1993) .................................................................. 11

*Williams v. MGM-Pathe Commc'ns Co.,*
    129 F.3d 1026 (9th Cir. 1997) .......................................................................... 20

*Yong Soon Oh v. AT&T Corp.,*
    225 F.R.D. 142 (D.N.J. 2004) ........................................................................... 12

## <u>Statutes</u>

12 U.S.C. § 2607(c)(4) ...............................................................................................11

12 U.S.C. § 2607(d) ............................................................................................13, 22

**INTRODUCTION**

On October 27, 2014, this Court preliminarily approved Plaintiffs' Class Action Settlement Agreement with Defendants Wells Fargo Bank, N.A. ("WFB") and Wells Fargo Insurance, Inc. ("WFI").[1] In its Preliminary Approval Order, the Court found that (1) "the terms of the Settlement Agreement (including the monetary relief and release of claims) are fair, reasonable, and adequate"; and (2) "the Claim Form set forth in the Settlement Agreement is not unduly burdensome for Settlement Class members to complete, and [] the claims process established by the Settlement is reasonable and appropriate." *ECF 89 at ¶¶ 8, 10.* Following this Order, notice of the Settlement was sent to the Settlement Class by direct mail, and the response has been overwhelmingly favorable. Out of 2,315,364 Settlement Class Members who were sent a Class Notice, only ten (representing less one thousandth of one percent of all Class Members) objected.[2] By contrast, over 300,000 claims for monetary relief were timely submitted. This constitutes compelling evidence that the Settlement is fair, reasonable and adequate. *See, e.g., In re Cendant Corp. Litig.*, 264 F.3d 201, 234-35 (3d Cir. 2001) (affirming district court's conclusion that the class' reaction was "extremely favorable" where 478,000 notices were sent, 4 objections were made, and 234 class members opted out).

As detailed below, the limited number of objections that have been made are meritless. Each of those objections, except two, are unsupported by any legal authority or analysis, and the remaining objections ignore the relevant *Girsh* factors and longstanding judicial precedent approving similar claims-made settlements. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

---

[1] The Settlement Agreement ("Settlement" or "Settlement Agreement") can be found in the record at ECF No. 87-1.

[2] There also were only 354 timely opt-outs, representing barely one hundredth of a percent of all Class Members (.015%).

1

# BACKGROUND

## I.   OVERVIEW OF LAWSUIT AND SETTLEMENT[3]

### A.   Nature of Claims Asserted

Plaintiffs filed this action on August 30, 2012, and filed a First Amended Complaint ("FAC") on November 2, 2012. *See ECF Nos. 1, 18.* In their FAC, Plaintiffs allege that WFB charged residential mortgage borrowers a $19 fee for flood zone determinations performed by WFI, which Plaintiffs contend was unlawfully marked-up and included an improper kickback from WFI to WFB. *ECF No. 18.* In connection with these allegations, Plaintiffs assert class claims against Defendants for violation of the Real Estate Settlement Procedures Act ("RESPA"), breach of contract, and unjust enrichment.[4] *Id.*

### B.   Procedural History

On November 6, 2013, this Court issued a lengthy Opinion ("MTD Opinion"), which denied in part and granted in parted Defendants' Motions to Dismiss. *See ECF No. 46.* On the same date, the Court also issued an Order ("ADR Order") referring the case to early mediation with Mr. Louis Kushner. *See ECF No. 50.*

Following the Court's MTD Opinion, Plaintiffs promptly served discovery on Defendants,[5] and Defendants produced a significant amount of documents and class data to

---

[3] The relevant facts relating to this lawsuit, and the negotiation and terms of the Settlement, were previously addressed in Plaintiffs' legal briefs in support of their Motion for Preliminary Approval of the Settlement (*ECF No. 86*), and Motion for Attorneys' Fees and Expenses (*ECF No. 92*). Plaintiffs incorporate that earlier background herein in full. For ease of reference, however, the relevant facts are briefly summarized once again below.

[4] Plaintiffs also separately assert a Truth-In-Lending Act ("TILA") claim against WFB based on the fact that it required Plaintiffs to obtain flood insurance for their property even though they signed a Truth-In-Lending Disclosure stating that flood insurance was not required. Based on the discovery taken to date, this claim appears to be highly individualized. Accordingly, Plaintiffs have settled this claim with Defendants on an individual basis.

[5] Prior to the Court's MTD Opinion, discovery was temporarily stayed. *See ECF No. 45.*

Plaintiffs' counsel. *Declaration of Kai Richter dated Jan. 16, 2015 (ECF No. 93), ¶ 14.* In addition, the Parties negotiated the use of documents produced in a related action in this Court involving Plaintiffs' counsel and Defendants, *Morris v. Wells Fargo Bank, N.A.*, No. 11-CV-00474-DSC (W.D. Pa.). *Id., ¶ 15.* In the *Morris* action, WFB and WFI collectively produced over 200,000 pages of documents, some of which related to the issues in the present case. *Id.*

In accordance with the Court's ADR Order, the Parties mediated with Mr. Kushner on February 26, 2014. *Id., ¶ 17.* Although they were unable to resolve the case at that time, they agreed to continue their negotiations with Mr. Kushner's assistance, and eventually reached an agreement on all material settlement terms on May 12, 2014. *Id., ¶¶ 18-19.* Thereafter, the Parties exchanged multiple drafts of a comprehensive Settlement Agreement, and executed the Settlement Agreement in August, 2014. *Id., ¶ 19.* Plaintiffs then filed a motion for preliminary approval of the Settlement (ECF No. 85), which was approved by the Court on October 27, 2014. *See ECF No. 89.*

### C.   Settlement Terms

The Settlement Agreement provides for certification of a nationwide Settlement Class of residential mortgage borrowers who were charged by WFB for a flood zone determination between August 30, 2011 and December 31, 2013. *Settlement, ¶ 2(aa).* Under the Settlement, Class Members who file a claim certifying that they paid for their flood zone determination are eligible to receive a $9.50 refund. *Id. at ¶ 2(cc).* This amount represents half the amount that WFB charged Settlement Class Members for flood zone determinations ($19), and the vast majority of the challenged "soft dollars" or "management accounting credits" that form the basis of Plaintiffs' markup and kickback claims in this case. *Declaration of Kai Richter dated Aug. 15, 2014 (ECF No. 87) at ¶ 4.*

3

As an added benefit to the class, Defendants agreed to pay all costs of settlement administration (*Settlement, ¶ 36*), including the substantial cost of mailing over 2 million Class Notices, processing claims, establishing a settlement website and toll-free telephone hotline, and sending payments to Settlement Class Members.  It is estimated that the total costs associated with administering the Settlement will be $1.5 million.  *ECF No. 93 at ¶ 22.*

In addition, Defendants agreed to pay any attorneys' fees and litigation costs that are awarded by the Court (up to $1.5 million).  *Settlement, ¶ 38.*  Thus, Class Members who submit claims will receive the full amount of their settlement payment, without deduction for attorneys' fees, litigation costs, or settlement administration expenses. *ECF No. 93 at ¶ 22.*

Finally, in connection with the mediation and settlement of this action, Defendants indicated that they discontinued "soft dollars" or "management accounting credits" in connection with flood zone determinations in 2013 (after this action was filed).  *Id., ¶ 21 at n.6.*  Thus, the disputed practice at issue in this lawsuit has ceased.

## II.   CLASS NOTICE AND REACTION OF THE SETTLEMENT CLASS

The Settlement Class consists of 2,315,364 Class Members.[6]  *Botzet Decl., ¶ 6.*  On December 1, 2014, the designated Claims Administrator, Rust Consulting, Inc. ("Rust"), sent the Court-approved Class Notice to those Class Members by mail.  *Id., ¶ 7.*  The Class Notice provided information to Class Members regarding, among other things: (1) the nature of the class claims; (2) the scope of Settlement Class; (3) the terms of the Settlement; (4) the process for submitting claims for monetary relief; (5) Class Members' objection and opt-out rights, and the deadline for asserting them; (6) the release that would apply in the event that Settlement Class members did not opt out; (7) the identity of Class Counsel and the compensation available to

---

[6] As used herein, the term "Class Member" refers to class member households, *i.e.,* joint accounts with multiple borrowers are only counted once, even though the class notices were addressed to all named borrowers on the account.  *Botzet Decl., ¶ 7 n.1.*

Class Counsel under the Settlement; (8) the date, time, and location of the final approval hearing; and (9) Class Members' right to appear at the final approval hearing. *See Botzet Decl., Ex. 1.* In addition, a Claim Form was included with each Class Notice. *Id.*

In the event that any Settlement Class members desired further information, the Claims Administrator set up a Settlement Website at www.jacksonsettlement.com. *Botzet Decl., ¶ 11.* Among other things, the Settlement Website included:

- The Complaint and First Amended Complaint;
- The Settlement Agreement and all exhibits to the Settlement Agreement;
- The Court-approved Class Notice;
- The Claim Form;
- A long-form notice with additional information;
- Plaintiffs' Preliminary Approval Motion and supporting documents;
- The Court's Preliminary Approval Order; and
- Plaintiffs' Motion for Attorneys' Fees and Expenses and supporting documents.

*Id.* In addition, the Settlement Administrator also established a toll-free telephone hotline that Settlement Class Members could call for more information. *Id., ¶ 12.*

In response to the Class Notice, Settlement Class Members timely submitted 300,995 Claim Forms to the Claims Administrator. In contrast, the number of Class Members who opted out or objected to the Settlement was remarkably low. Out of 2,315,364 Settlement Class Members who were sent a Class Notice, only 354 (.015%) elected to opt-out by the Opt-Out Deadline. *Botzet Decl., ¶ 14.* Moreover, only 10 Class Members filed timely objections, representing less than one thousandth of one percent of the Settlement Class (.0004%). *Id., ¶ 15.*[7] As discussed below, each of these objections are meritless. *See infra* at 15-25.

---

[7] The exceedingly small number of objectors is especially meaningful given the overall effectiveness of the notice program. Out of more than 2.3 million Class Notices that were mailed, only 11,752 (0.5%) were ultimately undeliverable. *Botzet Decl., ¶ 10.* These Notices were undeliverable despite Rust's efforts to verify address information for Class Members prior to mailing (by referencing the National Change of Address Database), and despite Rust's efforts to obtain valid address information in the event that notices were returned (by checking for forwarding addresses and conducting an automated skip trace, if necessary). *Id., ¶¶ 8-10.*

# ARGUMENT

## I.   STANDARD OF REVIEW

The decision whether to approve a class action settlement under Rule 23(e) is a matter of judicial discretion. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998) (quoting *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975)). However, there is a strong presumption in favor of settlements in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (citation omitted).

In evaluating a proposed class settlement, the Third Circuit has held that courts should consider the following factors ("*Girsh* Factors"): (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action through trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of the attendant risks of litigation. *Girsh*, 521 F.2d at 157. Here, the *Girsh* Facors strongly weigh in favor of approval of the Settlement, and none of the objectors argue otherwise. *See Hung Amended Objection (ECF No. 95) at 6* (stating that "the settling parties will doubtlessly focus on the nine factors for settlement fairness discussed in *Girsh*," but failing to analyze those factors). Accordingly, this Court should grant final approval of the Settlement.

## II.   THE SETTLEMENT SATISFIES THE RELEVANT *GIRSH* FACTORS

### A.   The Complexity, Expense and Likely Duration of the Litigation

With respect to the first *Girsh* Factor, there is no question that litigating this action through class certification, trial, and potential appeals would have been a long, expensive, and

complex fight.   The claims in this action involved complicated accounting issues relating to Defendants' so-called "soft dollars" program and the management accounting credits that were exchanged between WFI and WFB in connection with that program.   During the course of this litigation, Defendants have steadfastly maintained that these so-called "soft dollars," also known as "management accounting credits," were only an internal accounting mechanism, and had no independent value.   To litigate this issue, both sides would have had to retain accounting experts to pore through Defendants' financial statements and accounting records in detail, and engage in a "battle of the experts."   This fact alone weighs in favor of settlement approval.   *See Hall v. AT&T Mobility, LLC*, 2010 WL 4053547, at *7 (D.N.J. Oct. 13, 2010) (fact that trial would have required substantial expert testimony weighed in favor of approving settlement); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 460 (D.N.J. 2008) (same).

Moreover, the case also raised a number of threshold legal issues which required significant research and analysis, as reflected by the extensive briefing on the motions to dismiss and the Court's 43-page Opinion in connection with those motions. Indeed, it appears that no court has ever considered such an accounting program in a RESPA class action, making it likely that there would have been an appeal following a lengthy and costly battle in the district court.

This Court need look no further than the *Morris* Action – which involved a dozen depositions of defense witnesses, two third party depositions, and the production of more than 200,000 pages of documents – to get a sense of what the litigation of this action would have involved.   Moreover, WFB has vigorously defended itself in other class action litigation, including a consumer class action relating to overdraft charges that involved a lengthy bench trial and two appeals.   *See Gutierrez v. Wells Fargo Bank, N.A.*, -- F. App'x. --, 2014 WL 5462407 (9th Cir. Oct. 29, 2014) ("*Gutierrez II*") and 704 F.3d 712 (9th Cir. 2012) ("*Gutierrez I*").

In short, in the absence of a settlement, this case (which is already 2 ½ years old) likely would have dragged on for years.  Even if the Class had ultimately prevailed, which was far from certain (*see infra* at 10-11), it would have been years from now, and only after the parties had invested enormous amounts of time and expense over claims of relatively modest size.[8]  Courts favor settlements in class action cases because such cases consume an extraordinary amount of private (and judicial) resources.  *See In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D 109, 119 (D.N.J. 2001) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.") (quotations omitted); *Austin v. Penn. Dep't of Corr.*, 876 F. Supp. 1437, 1455 (E.D. Pa. 1995).  The present case is no exception.  Thus, one of the main benefits of entering into a settlement now is that it avoids further delay and expense, and assures immediate relief to the Class.

## B.      The Reaction of the Class to the Settlement

The second *Girsh* factor – the reaction of the Class to the Settlement – also weighs in favor of final approval.  As noted above, out of 2,315,364 Settlement Class Members who were sent a Class Notice, only 354 (.015%) timely opted out of the Settlement, and only ten (.0004%) filed objections.  *Supra* at 5.  Given the overall effectiveness of the notice program, which reached 99.5% of the Class (*supra* at 5 n.7), the fact that so few Class Members opted out or objected is a strong indicator that the Settlement is fair, reasonable, and adequate.  *See In re Cendant Corp. Litig.*, 264 F.3d at 234-35 (affirming district court's conclusion that the class' reaction was "extremely favorable" where 478,000 notices were sent, 4 objections were made, and 234 class members opted out); *Stoetzner v. U.S. Steel Corp.,* 897 F.2d 115, 118-19 (3d Cir. 1990) (holding that "only" 29 objections in 281 member class "strongly favors settlement"); *Bell*

---

[8] As noted above, WFB charged customers $19 for flood zone determinations, and only a portion of this was the subject of the so-called "management accounting credits."

*Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313–14 (3d Cir. 1993) ("Less than 30 of approximately 1.1 million shareholders objected.... This small proportion of objectors does not favor derailing settlement"); *accord*, *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (fact that only two class members objected out 300,000 weighed in favor of requested fee award).[9]

The small number of opt-outs and miniscule number of objections stands in stark contrast to the number of claims that were filed. As noted above, the Claims Administrator received 300,995 timely claims for monetary relief. Each of these claims represents an affirmative vote in favor of the Settlement, and these "yes" votes far outnumber the "no" votes (the opt-outs and objectors). Moreover, even when considered against the total number of Class Members, the claims rate in this case (13%) is above average for a consumer class action settlement. *See Gascho v. Global Fitness Holdings, LLC*, 2014 WL 1350509, at *30 (S.D. Ohio April 4, 2014) (crediting expert testimony that "response rates in class actions generally range from one to 12 percent with a median response rate, and a normal consumer response rate, of approximately five to eight percent"). Thus, the substantial number of claims that were filed also supports approval of the Settlement – especially when compared to the very low number of opt-puts and objections. *See In re Cendant Corp. Litig.*, 264 F.3d at 234-35 (class reaction favored approval where "the number of objectors was quite small in light of the number of notices sent and claims filed").

### C.   The Stage of the Proceedings and the Amount of Discovery Completed

The third *Girsh* Factor (the stage of the proceedings and the amount of discovery completed) also favors settlement approval. As noted above, this matter is already 2½ years old.

---

[9] *See also In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226, 239 (E.D. Pa. 2009) (where 387,263 class notices were sent, 12 class members objected, and 840 opted out, the class' reaction was favorable and created a "strong presumption in favor of the settlement"); *Varacallo v. Mass. Mut. Life Ins. Co.,* 226 F.R.D. 207, 251 (D.N.J. 2005) (because only .06% of the class members opted out of the settlement, this factor favored approval of the settlement).

The Parties vigorously litigated the merits of the action in connection with Defendants' motions to dismiss, and had the benefit of the Court's extensive Opinion on those motions.  Upon issuing that Opinion, the Court ordered the Parties to participate in mediation, and prior to mediation, Plaintiffs' counsel obtained a significant amount of information from Defendants relating to flood zone determinations, related charges, soft dollar/management accounting credit entries, and other relevant matters.  *ECF No. 87 at ¶ 16.*   In addition, Plaintiffs' counsel had the benefit of extensive discovery from the *Morris* action.  *Id., ¶ 17.*  Thus, the case clearly was ripe for Settlement.  As this Court stated in its Preliminary Approval Order:

> The Court … finds that the Settlement Agreement is the result of arms-length negotiations conducted after Class Counsel had adequately investigated the claims in the Actions and became familiar with the strengths and weaknesses of those claims.

*ECF No. 89 at ¶ 8.*

### D.      The Risks of Establishing Liability and Damages

The fourth and fifth *Girsh* Factors (the risks of establishing liability and damages) further demonstrate the fairness and reasonableness of the Settlement.  Although this Court denied Defendants' motions to dismiss and found that Plaintiffs had stated "plausible" claims, it is uncertain whether Plaintiffs ultimately would have prevailed on the merits of those claims. Notably, since 2010 alone, several circuit courts have affirmed orders dismissing RESPA claims against WFB or Wells Fargo Home Mortgage, including the Third Circuit on three separate occasions. *See Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339 (4th Cir. 2014); *Taggart v. Wells Fargo Home Mortg., Inc.*, 563 F. App'x. 889 (3d Cir. 2014); *Taggart v. Norwest Mortg., Inc.*, 539 F. App'x. 42 (3d Cir. 2013); *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516 (10th Cir. 2013); *McCrimmon v. Wells Fargo Bank, N.A.*, 516 F. App'x. 372 (5th Cir. 2013); *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655 (8th Cir. 2012); *Martinez v. Wells Fargo Home Mortg.,*

*Inc.*, 598 F.3d 549 (9th Cir. 2010); *Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119 (3d Cir. 2010).

As discussed above, Defendants asserted a factual defense to Plaintiffs' kickback claims, on the ground that the challenged management accounting credits were tracked solely for internal recordkeeping purposes and provided no real benefit to WFB. *Supra* at 7. In addition, Defendants asserted numerous legal defenses to Plaintiffs' claims in their Answer, *see ECF Nos. 59-60*, including but not limited to an "affiliated business arrangement" defense under 12 U.S.C. § 2607(c)(4). Although Plaintiffs believe that their claims are strong, they would have faced significant risks if they had continued to litigate their claims. By entering into a settlement now, Plaintiffs have hedged against these risks and locked in significant benefits for Class Members in relation to the size of their possible recovery. To the extent that the objectors suggest that a better result could have been achieved, they completely ignore these risks.

**E.      The Risks of Maintaining the Class Action Through Trial**

In addition to these risks on the merits, Plaintiffs also faced risks on class certification. Although this Court certified a class for settlement purposes, "[t]he requirements for class certification are more readily satisfied in the settlement context than when a class has been proposed for the actual conduct of the litigation." *White v. Nat'l Football League*, 822 F. Supp. 1389, 1402 (D. Minn. 1993) (citations omitted); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 303 (3d Cir. 2011) (*en banc*). Thus, there is no guarantee that a class would have been certified for litigation purposes in this case.

In several other RESPA cases, class certification has been denied on various grounds. *See, e.g., Hyderi v. Washington Mut. Bank, FA*, 235 F.R.D. 390 (N.D. Ill. 2006); *Levine v. North American Mortg.*, 188 F.R.D. 320, 330-32 (D. Minn. 1999); *Briggs v. Countrywide Funding Corp.*, 188 F.R.D. 645, 650-51 (M.D. Ala. 1999); *Golon v. Ohio Sav. Bank*, 1999 WL 965593 (N.D. Ill. Oct. 15, 1999). If the Court had reached a similar ruling in this case, there would have been no relief for any borrowers except the named Plaintiffs, regardless of the merits the underlying claims. Because of this risk – and because this action was never certified as a class action for litigation purposes – the sixth *Girsh* Factor also favors approval of the Settlement.

**F.      The Ability of the Defendants to Withstand a Greater Judgment**

Although Defendants could withstand a greater judgment, this is not a sufficient basis (by itself) to deny settlement approval. *See Yong Soon Oh v. AT&T Corp.*, 225 F.R.D. 142, 150-51 (D.N.J. 2004); *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *5 (D.N.J. May 31, 2012). As a practical matter, Defendants were not willing to pay more to settle the case, and would have paid nothing if they had prevailed. As discussed herein, the relief that was negotiated is fair and reasonable in light of the risks and delay associated with continuing the litigation. The fact that Defendants might have been able to pay more does not mean that a larger payout was within the realm of possible settlements that could have been achieved.

**G.      The Range of Reasonableness of the Monetary Relief in Light of the Best Possible Recovery and All the Attendant Risks of Litigation**

The final two *Girsh* Factors (the range of reasonableness of the monetary relief in light of the best possible recovery and all the attendant risks of litigation) also support approval of the Settlement. Under the Settlement, every Class Member who submitted a timely and valid claim will receive a refund equal to $9.50, and they are entitled to multiple refunds if they paid for flood zone determinations on multiple loans during the class period. Although the amount of this

refund is superficially small, it represents half the amount that Class Members were charged for flood zone determinations ($19), and the vast majority of the challenged "soft dollars" or "management accounting credits" that form the basis of Plaintiffs' markup and kickback claims. *Supra* at 3.  In addition, Defendants have agreed to pay the attorneys' fees of Class Counsel, and all litigation and settlement administration expenses, consistent with 12 U.S.C. § 2607(d)(5). Thus, the Settlement provides close to a "best case" recovery for Class Members.  The only exception is that Class Members will not receive treble damages under RESPA.  *See* 12 U.S.C. § 2607(d)(2).  However, it is not realistic to expect a defendant to pay treble damages in connection with a settlement, which necessarily involves compromise by both sides.

As noted above, Plaintiffs faced substantial risks in this case, both on the merits and with respect to class certification.  *See supra* at 10-12.  In light of these risks, the recovery provided by the Settlement not only reasonable, but exceptional.  *See Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 451 (E.D. Pa. 1985) (noting settlements are frequently approved, even in the lower range of possible recovery, "[b]ecause of the[] inherent risks of litigation.").

Indeed, ***the recovery provided to individual Class Members under the Settlement is*** ***<u>better</u> than the recovery they would receive under under Objector Hung's proposed settlement*** ***structure***.  In his Objection, Hung states that "[h]e does not argue that this case must settle for for an actual $22 million or even for $15 million or $10 million" *ECF No. 95 at 7.*  His "cardinal objection" is that the settlement should have been allocated differently.  *Id.*  However, even if (1) Wells Fargo were willing to pay $10 million into a common settlement fund (which it is not), (2) the fund were distributed to all Class Members (as proposed by Hung), and (3) Class Counsel's fees were limited to 25% of the fund (as proposed by Hung), the end result would be a lower recovery for individual Class Members and a greater recovery for Class Counsel:

13

|  | Hung Proposal | Settlement Agreement |
|---|---|---|
| Gross amount available to Class | $10 million | $22 million (rounded) |
| Less Attorneys' Fees and Costs[10] | $2.5 million (25%) | $0 ($1.5 million paid by Defendants) |
| Less Costs of Admininistration[11] | $1.5 million | $0 ($1.5 million paid by Defendants) |
| Remainder Available to Class | $6 million | $22 million |
| Persons entitled to payment | All Class Members (2,315,364) | Claiming Class Members |
| Net Amount per person | $2.59 | $9.50 |

Although Class Members must submit claims in order to receive compensation under the Settlement, this does not make the Settlement objectionable. *See infra* at 15-18. As this Court previously found, "the Claim Form set forth in the Settlement Agreement is not unduly burdensome for Settlement Class members to complete, and [] the claims process established by the Settlement is reasonable and appropriate." *ECF 89 at ¶ 10.*

## III.   OTHER FACTORS ALSO WEIGH IN FAVOR OF APPROVING THE SETTLEMENT

Although Hung argues that "the *Girsh* test is not exhaustive," and urges the Court to consider other factors, *see ECF No. 95 at 6*, the other factors that are typically considered also support approval of the Settlement in this case. For example, in *In re Warfarin Sodium Antitrust Litig.*, the court held that an initial presumption of fairness attaches to a class action settlement where: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)). These additional criteria are easily satisfied here. It is undisputed that the Parties' negotiations were conducted at arm's length through the court-appointed mediator. Plaintiffs sought and obtained discovery in

---

[10] Under Hung's proposal, Class Counsel presumably would be entitled to recover their litigation costs in addition to attorneys' fees. However, for purposes of simplicity, this chart assumes a combined 25% award for attorneys' fees and costs.

[11] Costs of settlement administration actually would be substantially higher under Hung's proposal because settlement payments would be distributed to all Class Members.

advance of mediation.  Class Counsel and defense counsel are both experienced in complex class action litigation.  Finally, a miniscule number of Class Members objected.  For these reasons as well, the Settlement should be approved.

**IV.     THE OBJECTIONS TO THE SETTLEMENT SHOULD BE OVERRULED.**

As noted above, only ten Class Members objected to the Settlement, representing ***approximately one objection per quarter million class members***.  Notably, ***none*** of these objections address the relevant *Girsh* Factors.  Instead, the objections seek to impose conditions to settlement approval that do not exist, misunderstand the Settlement or the nature of the claims, or both.  For the reasons discussed below, each of these objections should be overruled.

**A.     The Hung Objection Is Meritless**

Objector Wei Hung submitted a one-page objection to the Settlement on December 19, 2014.  *See Botzet Decl., Ex. 3 at 23-24.*  Approximately six weeks later, on the eve of the objection deadline, Hung filed an amended objection through his counsel, which purported to "supersede[] Hung's previous objection." *ECF No. 95 at 2.*[12]   In his Amended Objection, Hung objects to (1) the claims-made settlement structure; (2) the amount of attorneys' fees requested by Class Counsel; and (3) the compensation provided to the named Plaintiffs in connection with their TILA claim.  Each of these objections are meritless.

**1.     The Claims Process Established by the Settlement Is Reasonable and Appropriate**

Hung's objection to the claims process established by the Settlement is curious, given that (1) Hung filed a claim (*Botzet Decl., ¶ 17*); and (2) Hung will recover more under the Settlement than he would under his own suggested settlement structure.  *See supra* at 14.

---

[12] The Court should strike Hung's Amended Objection because it violates the Court's Case Management Order that "Briefs shall not exceed twenty-five (25) pages without leave of court." *ECF No. 49 at 2.*

Because Hung does not (and cannot) assert that the claims process prejudiced him in any way, he has no standing to object to the Settlement on this basis.   In any event, his objections are inconsistent with this Court's Preliminary Approval Order and applicable law.

As Hung concedes, "a claims process in unexceptional in class action settlement administration." *ECF No. 95 at 8.*   Courts in this Circuit and elsewhere routinely approve class action settlements that include a claims process.   *See, e.g., See Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 28 (D.D.C. 2011) ("Class actions often require a claims process to ensure money is fairly distributed for valid claims."); *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *6 (D.N.J. Sept. 10, 2009) ("Courts have frequently upheld claim forms such as the one utilized in this case, and the Court finds it perfectly appropriate to require Class members to submit certain information proving that they are entitled to collect the relief awarded in this case."); *Shames v. Hertz Corp.*, 2012 WL 5392159, at *9 (S.D. Cal. Nov. 5, 2012) (holding that claims processes are routine in class settlements) (collecting cases).   Thus, "[t]here is nothing inherently suspect about requiring class members to submit claim forms to receive payment." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 593 (N.D. Ill. 2011).

In *Rubin v. Assicurazioni Generali S.P.A.*, 290 F. App'x 376, 377 (2d Cir. 2008), the Second Circuit expressly rejected an objection to a settlement on the basis that it "releases claims held by class members who will not be compensated under the settlement because they have not filed claims."   This is significant because the Second Circuit follows the exact same criteria for settlement approval as the Third Circuit. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005).   Moreover, in numerous other cases, courts have rejected similar challenges to settlements on the ground that class members were required to submit claim forms to receive payment. *See, e.g., Fladell v. Wells Fargo Bank, N.A.*, 2014 WL 5488167, at *4 (S.D.

Fla. Oct. 29, 2014) (rejecting objections to claims-made settlement structure in connection with class action settlement involving flood insurance); *Casey v. Citibank, N.A.*, 2014 WL 4120599 (N.D.N.Y. Aug. 21, 2014) (same); *Arthur v. Sallie Mae, Inc.*, 2012 WL 90101, at *11 (W.D. Wash. Jan 10, 2012) (rejecting objection that settlement was "illusory" because class members who did not submit a claim form would not be entitled to relief).

The court's decision in *Fladell* in directly on point.  The settlement in that case also (1) released certain claims of mortgage borrowers relating to flood insurance; (2) required class members to submit claims attesting that they paid the disputed charges; and (3) involved WFB and WFI as defendants.  After giving careful consideration to the objections to the claims process in that case, the court rejected them in their entirety:

> The Court has carefully considered the arguments raised by all of the remaining objections, including regarding the claims-made structure of the settlement, … and they are hereby overruled. There is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment. Moreover, the objectors' criticism of the claims-made structure does not impact the fairness, reasonableness, or adequacy of the proposed settlement. This Settlement is fair, reasonable, and adequate independent of the number of claims filed. While a direct payment structure would obviously result in more, and possibly all, class members receiving a share of the monetary relief in the settlement, there is no reason to believe the defendants would agree to such terms, and, in any event, the Court does not have the authority to impose a preferred payment structure upon the settling parties.  And the Settlement's claims process is needed for other reasons, including to ensure that only aggrieved individuals receive monetary relief and to reduce the risk of fraud, waste, and abuse that might arise from sending unsolicited checks to unverified addresses and recipients.

*Fladell*, 2014 WL 5488167, at *4  (internal quotation marks, brackets, and citations omitted).

The same logic applies here.  The monetary relief provided by the Settlement is reasonable in relation to the size of the claims.  *See supra* at 12-14.  While a direct payment structure would result in a larger aggregate payout (but not a larger individual payout), there is no reason to believe that WFB and WFI would agree to such terms, and the Court cannot impose

a different settlement structure on the Parties.  Moreover, the claims process here is appropriate to (1) ensure that only aggrieved persons who attest that they paid the disputed charges receive monetary relief; (2) avoid unnecessary settlement administration expenses associated with distributing checks to Class Members do not have claims; and (3) reduce the risk of fraud, waste, and abuse that might arise from sending unsolicited checks to Class Members.[13]

To the extent that Hung argues that the Claim Form in this case "may impose too much of a burden on class members," *ECF No. 95 at 9*, this argument is specious.  The only thing Class Members had to do was sign and return the postcard form that was included with the Class Notice.  This postcard-sized form is *less* lengthy and *less* burdensome than the multi-page claim form that was approved in *Fladell*.  Hung certainly had no trouble completing the Claim Form and returning it to the Claims Administrator himself.  Moreover, the claims rate here is significantly higher than in a typical consumer class action settlement.  *See supra* at 9.  Thus, the Court had good reason to find that "the Claim Form set forth in the Settlement Agreement is not unduly burdensome for Settlement Class members to complete[.]"  *ECF 89 at ¶ 10.*[14]

### 2.    Class Counsel's Fee Request Is Also Reasonable and Appropriate

Hung's objections to attorneys' fees are also meritless.  For the reasons previously explained in Plaintiffs' Memorandum in support of their Motion Attorneys' Fees and Expenses, the compensation sought by Class Counsel is reasonable and appropriate.  *See ECF No. 92.*

---

[13] Hung assumes that the same absent Class Members who failed to complete and return a simple postcard notice claim form would read a letter from the same sender that enclosed a $9.50 check, and then cash the check.  However, there is no basis for this assumption.  To the contrary, sending checks to such absent Class Members would most likely be wasteful and futile.

[14] Although Hung complains that an electronic mailbox was not set up for the purpose of receiving claim forms online,  there is no requirement that class members be allowed to submit claims electronically.  *See, e.g.*, *In re Processed Egg Products Antitrust Litig.*, 284 F.R.D. 249 (E.D. Pa. 2012) (approving claims process and settlement website that required claims to be submitted by US Mail).  Moreover, it is doubtful that it would be more convenient to scan the claim form and submit it electronically than simply putting it in one's mailbox with the flag up.

Although Hung goes to great lengths to paint the Settlement as a "collusive" bargain with Defendants that puts the "self-interest" of Class Counsel ahead of the Class, *ECF No. 95 at 8*, there is absolutely no support for this inflammatory and highly offensive assertion.  Plaintiffs' undersigned counsel (a former Assistant Attorney General for the State of Minnesota) already has testified that the settlement negotiations were conducted at arm's length at all times, and those negotiations were overseen by a well-respected mediator that the Court directed the Parties to utilize in this case.  Accordingly, this court should decline to entertain Hung's conspiracy theories.  *See Casey*, 2014 WL 412055, at *2 ("[O]bjectors' invitation to infer collusion between the parties based on the payment structure and timing of the settlement is declined.").

To the extent that Hung argues that the requested attorneys' fees are excessive in relation to the benefit provided to the Class, this argument is predicated on two false notions that are inconsistent with applicable law.  ***First***, Hung asserts that unclaimed funds must be disregarded by the Court when determining the proper fee under the percentage-of-recovery method.  However, the Third Circuit has declined to adopt such a strict rule, describing it as "unwise."  *See In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 178 (3d Cir. 2013).  In fact, the court expressly stated that "[c]lass counsel should not be penalized" where "class members' individual damages are simply too small to motivate [some of] them to submit claims."  *Id.*  Thus, the total amount of funds made available to the class may be (and should be) considered, consistent with longstanding precedent.  *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980);[15] *Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App'x 191, 198 (3d Cir. 2014) (fee award based on gross value of settlement was justified even though some monies in class member reimbursement fund

---

[15] Hung argues that the United States Supreme Court decision in *Boeing* was "legislatively superceded."  *ECF No. 95 at 28.*  However, he completely fails to flesh out this theory, and no court has ever adopted it.  To the contrary, the cases cited herein (which include cases from as recently as 2013 and 2014) demonstrate that *Boeing* remains good law.

were unclaimed); *Lake Forest Partners, L.P. v. Sprint Commc'ns Co., L.P.*, 2013 WL 3048919, at *2 (W.D. Pa. June 17, 2013) ("Under the percentage-of-the-fund method, it is appropriate to base the percentage on the gross cash benefits available for class members to claim, plus the additional benefits conferred on the class by the [defendant's] separate payment of attorneys' fees and expenses, and the expenses of administration."); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("An allocation of fees by percentage should ... be awarded on the basis of total funds made available whether claimed or not."); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295 (11th Cir. 1999) (distribution of attorneys' fees are to be based upon the funds available to eligible claimants, whether claimed or not; affirming a fee award nearly twice the amount actually claimed by the class from the fund); *Williams v. MGM–Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) (reversing award of attorney's fees because trial court failed to base fee award on the entire settlement, rather than the amount claimed).[16]  When calculated on this basis, ***the requested attorneys' fees and expenses ($1.5 million) are only about 6% of the total monetary benefits available ($25 million)***.[17]  This is clearly reasonable, and well under the 25% benchmark proposed by Hung.

***Second***, Hung also asserts, based on out-of-circuit authority, that this Court should disregard the fact that Defendants (instead of the Class) will absorb the costs of settlement administration.   However, case law in this District is clear that the Court should include "expenses of settlement administration" in considering the total value of the settlement for the

---

[16] As even Hung concedes, "some courts that have awarded fees on a percentage-of-recovery basis have made the calculation on the bais of the entire fund, not just the amount of the fund that is claimed by the class." *ECF No. 95 at 26; see also id. at 17* (expressing "doubt" as to his own suggested method for calculating attorneys' fees).

[17]
$$\frac{\$1,500,000 \text{ fees/expenses}}{[\$22,000,000 \text{ available to be claimed} + \$1,500,000 \text{ fees/expenses} + \$1,500,000 \text{ administration expenses}]} = 6\%$$

purpose of determining attorneys' fees. *See Lake Forest Partners*, 2013 WL 3048919 at *2; *accord*, *Lopez v. Youngblood*, 2011 WL 10483569, at *12 (E.D. Cal. Sept. 2, 2011) ("Where there is a claims-made settlement, such as here, the percentage of the fund approach ... is based on the total money available to class members, plus costs (including class administrative costs) and fees."). Thus, *even if this Court were to disregard amounts that were unclaimed by Settlement Class Members – which it should not do for the reasons explained above – the requested fees would still be barely more than 25% of the total value of the Settlement*.[18]

Hung's objection to the so-called "clear sailing" aspect of the Settlement as it relates to attorneys' fees is also without merit. The Third Circuit previously has overruled this precise objection, finding it insufficient to reject an otherwise reasonable settlement. *See In re Prudential Sales Prac. Litig.*, 148 F.3d at 312-13.[19] In any event, the the Settlement Agreement simply places a cap on fees and expenses, and leaves the ultimate determination of the amount to the Court. *See ECF No. 87-1 at ¶ 38* (providing that "Plaintiffs' Counsel shall file a motion for attorneys' fees and expenses in an amount *not to exceed* $1,500,000" and "Defendants will pay attorneys' fees and costs in an amount *up to* $1,500,000 as ordered by the Court.") (emphasis added); *id. at ¶ 41* ("This Settlement Agreement is not conditioned upon Court approval of attorneys' fees and costs in any amount").

To the extent that Hung objects that attorneys' fees and expenses "will be paid separate and apart from class relief," *ECF No. 95 at 19*, there is nothing unusual about this. Indeed, a

---

[18] The total amount claimed is approximately $2,859,452.50 (300,995 timely claims x $9.50). Factoring in attorneys' fees and expenses ($1.5 million) and settlement administration expenses (an additional $1.5 million) yields a total settlement value of $5,859,452.50. The requested attorneys' fees and expenses are 25.6% of this amount.

[19] Like Hung, the objector in *Prudential* argued that "that an improper 'clear sailing' fee agreement between class counsel and Prudential created an impermissible conflict of interest." *Id.* at 312. However, the Third Circuit "agree[d] with the district court's finding that the attorneys' fee arrangement between class counsel and Prudential did not affect the adequacy of representation." *Id.* at 313.

"segregated fee fund" is particularly appropriate here because RESPA contains a separate provision for attorneys fees and expenses, *see* 12 U.S.C. § 2607(d)(5), which is independent of the provision relating to monetary relief for "the persons charged for the settlement service." 12 U.S.C. § 2607(d)(2).  Thus, if there was not a segregated fee fund in this case, Hung or other Class Members might have argued that Class Counsel "sold the Class short" by deducting fees and expenses from a common fund (and consequentially, their recovery).

Finally, Hung's arguments regarding Class Counsel's lodestar are also meritless.  As Hung concedes, "the law of this Circuit recognizes that the percentage-of-recovery ("PoR") fee methodology is the generally superior method to use." *ECF No. 95 at 25.*  As noted above, the fee as a percentage of the recovery in this case is reasonable regardless of whether the recovery is based on the amount of funds available to the Class or the amount of funds claimed by the Class.  Moreover, the lodestar figures submitted by Class Counsel demonstrate that Class Counsel is not seeking a windfall.  Indeed, given the additional time that Class Counsel has spent preparing this Motion and responding to various objections, the lodestar multiplier (which already was reasonable and within commonly-approved boundaries) is even lower than previously reported.[20]  Further, although Hung objects that time from the *Morris* case was included in Class Counsel's lodestar, it is appropriate to include this time because (1) this action was filed as a related case to *Morris*; (2) the time that Class Counsel spent reviewing documents in *Morris* benefitted the Class in this case; and (3) Class Counsel has not been compensated in *Morris* and will not be compensated in *Morris* for any of the significant time spent reviewing documents in that case. *Supplemental Richter Decl., ¶ 12.*

---

[20] Including this additional work, Class Counsel's lodestar in connection with this action and document review in *Morris* is $530,852.50.  *Supplemental Richter Decl., ¶ 11.*  Thus, the multiplier (after accounting for $13,286.31 in expenses) is 2.80, calculated as follows:

$$2.80 = [\$1,500,000 - \$13,286.31] / \$530,852.50$$

### 3.   The Class Representatives Are Adequate

Hung next argues that Plaintiffs are inadequate class representatives because they received "enhancement payments." *ECF No. 95 at 21.*  However, this argument misstates the record.  ***Plaintiffs did not receive an enhancement payment or any incentive or service award in exchange for settling their class claims against Defendants.***  Instead, the additional consideration that Plaintiffs will receive under the Settlement relates to their separate and independent TILA claim, which arises from different facts unique to their particular circumstances.  Specifically, Plaintiffs' TILA claim is based on the fact that WFB gave them a TILA disclosure with a handwritten notation indicating they were "not required" to purchase flood insurance for their property, but WFB later required them to do so. *See FAC, ¶¶ 7–18.*  Given the highly individualized nature of this claim, there was nothing objectionable about Plaintiffs settling this claim on an individual basis, and the amount paid by Defendants to resolve this individual claim has been substantiated by Plaintiffs in their previously-filed Declaration. *See ECF No. 88 at ¶¶ 23-33.*  In return for this additional relief in connection with their individual TILA claim, Plaintiffs are granting Defendants a General Release (in Paragraph 50 of the Settlement Agreement) that is much broader than the Class Release (in Paragraph 49) that applies to other Class Members.  Thus, additional consideration is appropriate and necessary.

The fact that a named plaintiff has both individual and class-wide claims against the same defendant does not render that plaintiff an inadequate class representative. *See Krzesniak v. Cendant Corp.*, 2007 WL 1795703, at *10 (N.D. Cal. June 20, 2007) (granting motion for class certification and rejecting defendants' argument that plaintiff was an inadequate class representative because he asserted individual claims in addition to class claims).  Although Hung implies (without expressly saying) that Plaintiffs traded class relief for individual relief, the record reflects otherwise.  As noted above, the class relief is fair and reasonable in relation to the

23

size of the class claims (*see supra* at 12-14), and the settlement of those class claims "is not contingent upon the Court awarding Plaintiffs $25,000." *ECF No. 87-1 at ¶ 43.* As Plaintiffs have testified:

> [O]ur support for the class settlement is not contingent on whether the Court approves the settlement of our individual TILA claim. Pursuant to Paragraph 43 of the Settlement Agreement, we would (and do) support the class settlement without regard to the terms on which our individual TILA claim is resolved.

*ECF No. 88 at ¶ 34.* Thus, Hung has *no basis* for attacking Plaintiffs' adequacy or integrity.

### B. The Diaz/Nahhas Objection Is Duplicative of Hung's Meritless Objection to the Claims-Made Settlement Structure

Like Hung, objectors Alejandro Diaz and Mayda Nahhas object to the claims-made structure of the Settlement. This objection is duplicative of Hung's objection, and should be rejected for the reasons set forth above. *See supra* at 15-18. To the extent that Diaz/Nahhas raise any "new" arguments, those arguments are based on the false assumption that this is a common fund settlement which requires Defendants to pay fixed lump sum, and that there will be funds remaining after settlement payments are made to Class Members who filed claims. This is simply untrue. Defendants have agreed to pay "a sum equal to the total amount of Settlement Payments due to all Settlement Class Members who submitted a Valid Claim Form." *ECF No. 87-1 at 34.* Defendants are not required to pay anything more and not allowed to pay anything less. Accordingly, there will be no residual to distribute, and the case law cited by Diaz/Nahhas relating to common fund settlements and *cy pres* is inapposite.

### C. The *Pro Se* Objections Are Meritless

Finally, the various objections raised by the *pro se* objectors are unsupported by any legal authority, and meritless for the reasons disussed below.

**No Basis for Objection**: Class Members Joel Masamvu and Anne E. Edouard both filed one-sentence objections, but fail to explain why they believe the Settlement is objectionable.

Because they do not state the basis for their objections, their objections are invalid and the Court need not consider them.  *See Preliminary Approval Order (ECF No. 89) at ¶ 16* (Class Members who object "must state the basis for the objection" and "shall be deemed to have waived any objections to the Settlement" if they do not make their objection in the required manner).

**Duplicative Objections to Attorneys' Fees**: Five Class Members raise cursory objections to Class Counsel's requested attorneys' fees.[21]  These objections are duplicative of Hung's objection, and provide no independent basis for challenging the requested fees. Accordingly, this Court should overrule the objections.   For the reasons previously discussed in connection with this Motion and Plaintiffs' Motion for Attorneys' Fees and Expenses, the requested fees are reasonable and appropriate.

**Other Objections**.   Douglas and Lorraine Porter raise two additional objections that misapprehend the nature of the class claims in this case.  <u>First</u>, the Porters appear to object to the fact that they were required to carry flood insurance by WFB.  However, the class claims in this case related to alleged kickbacks in connection with flood zone determinations, not to flood insurance requirements.   Indeed, claims relating to flood insurance requirements are exempted from the Class Release.  *See ECF No 87-1 at ¶ 2(y)(2).*  <u>Second</u>, as to the alleged kickbacks, the Porters state that "[t]he people that paid and received the kickback should be charged and put in jail."   However, this objection overlooks the fact that that this is a civil action, not a criminal action.  Accordingly, these objections also should be overruled.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant final approval of the Settlement.

---

[21] These objections were submitted by Billy and Carolyn Arnold, Muvjot Singh, James S. Johnson, Jr., John and Caroline Metcalf, and Douglas an Lorraine Porter.

Dated: February 19, 2015   /s/ Kai Richter
          Kai H. Richter, MN Bar No. 0296545*
          E. Michelle Drake, MN Bar No. 0387366*
          Daniel C. Bryden, MN Bar No. 0302284*
           *(admitted *pro hac vice*)
          Michele R. Fisher, MN Bar No. 303069
           (admitted to practice in W.D.Pa.)
          4600 IDS Center
          80 South Eighth Street
          Minneapolis, MN 55402
          Telephone: (612) 256-3200
          Fax: (612) 215-6870
          Email: krichter@nka.com
             drake@nka.com
             dbryden@nka.com
             fisher@nka.com

          *ATTORNEYS FOR PLAINTIFFS AND THE*
          *SETTLEMENT CLASS*